# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 2, 2018                    Decided June 8, 2018

No. 16-1344

NATIONAL ENVIRONMENTAL DEVELOPMENT ASSOCIATION'S
CLEAN AIR PROJECT,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

———

Consolidated with 16-1345, 16-1346

———

On Petitions for Review of Amendments to Regulations
Promulgated by the United States Environmental Protection
Agency

———

*Allison D. Wood* and *Shannon S. Broome* argued the cause for petitioners. With them on the briefs were *Felicia H. Barnes*, *Leslie Sue Ritts*, and *Charles H. Knauss*. *Stacy R. Linden* entered an appearance.

*Andrew J. Doyle*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *Jeffrey H. Wood*, Acting Assistant Attorney General, and *Carol S. Holmes*, Attorney Advisor, U.S. Environmental Protection Agency.

Before: GARLAND, *Chief Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

EDWARDS, *Senior Circuit Judge*: This case involves a challenge by Petitioners National Environmental Development Association's Clean Air Project, American Petroleum Institute, and Air Permitting Forum ("Petitioners") to Amendments to Regional Consistency Regulations ("Amended Regulations"), 40 C.F.R. §§ 56.3–56.5 (2017), adopted by the Environmental Protection Agency ("EPA") pursuant to § 7601 of the Clean Air Act ("Act"), 42 U.S.C. § 7601. The Amended Regulations were issued in response to this court's decision in *National Environmental Development Association's Clean Air Project v. EPA* (*NEDACAP I*), 752 F.3d 999 (D.C. Cir. 2014).

*NEDACAP I* arose after the Sixth Circuit issued *Summit Petroleum Corp. v. EPA*, 690 F.3d 733 (6th Cir. 2012). In *Summit*, EPA had in force regulations adopted pursuant to the Act concerning "major sources" of pollution. The Act requires an operator of a "major source" of pollution to obtain a permit for a fixed term. 42 U.S.C. § 7661a(a). Under EPA regulations, multiple pollutant-emitting activities are treated as a single stationary source if they are, *inter alia*, "adjacent." 40 C.F.R. § 71.2; *id.* § 52.21(b)(5)–(6). EPA had determined whether facilities were "adjacent" on the basis of the functional interrelationships between the facilities, and not simply the physical distance separating them. In *Summit*, however, the Sixth Circuit vacated an EPA determination that a natural gas

plant and associated wells were one "source" for the purpose of permitting under the Act.

EPA took exception to the *Summit* decision because it effectively overturned a nationally applicable EPA policy. In December 2012, EPA issued a Directive to the Regional Air Directors of each of the ten EPA regions stating that,

> [o]utside the [Sixth] Circuit, at this time, the EPA does not intend to change its longstanding practice of considering interrelatedness in the EPA permitting actions in other jurisdictions. In permitting actions occurring outside of the [Sixth] Circuit, the EPA will continue to make source determinations on a case-by-case basis using the [agency's] three factor test.

*NEDACAP I*, 752 F.3d at 1003. One of the Petitioners here filed suit in this court challenging EPA's *Summit* Directive. The petitioner argued that by establishing inconsistent permit criteria applicable to different parts of the country, the *Summit* Directive violated the Clean Air Act and EPA regulations. We granted the petition for review, holding that the *Summit* Directive could not be squared with EPA's regulations. *Id.* We did not decide whether the *Summit* Directive also contravened the requirements of the Clean Air Act.

Almost immediately after the decision in *NEDACAP I* was issued, EPA instituted rule making to amend the old Regional Consistency Regulations. In August 2016, EPA issued the Amended Regulations that are at issue in this case. To address the *Summit* issue, the Amended Regulations make it clear that

> only the decisions of the U.S. Supreme Court and decisions of the U.S. Court of Appeals for the D.C. Circuit Court that arise from challenges to "nationally

applicable regulations . . . or final action," as discussed in Clean Air Act section 307(b) (42 U.S.C. 7607(b)), shall apply uniformly.

40 C.F.R. § 56.3(d).

The Petitioners challenge the Amended Regulations principally on the ground that, under 42 U.S.C. § 7601(a), EPA is required to implement the Act uniformly nationwide and establish mechanisms for resolving judicially created inconsistencies. Petitioners' position is difficult to comprehend, however. For example, if the Sixth Circuit issues a decision that is contrary to EPA national policy, as happened in *Summit*, Petitioners contend that the agency cannot follow the approach announced in the *Summit* Directive. Does that mean that EPA must apply the Sixth Circuit decision in all regions? The statute does not require this. And if the Seventh Circuit subsequently issues a judgment that is at odds with the Sixth Circuit decision, would EPA be required to change its position again? Petitioners offer no viable answers.

Under the Act, the D.C. Circuit has jurisdiction to hear petitions for review of "any . . . nationally applicable regulations promulgated, or final action taken" under the Act, as well as any other final agency action that is, *inter alia*, "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). The Act assigns all other petitions for review – including most challenges to "any . . . final action . . . which is locally or regionally applicable" – to "the United States Court of Appeals for the appropriate circuit." *Id.* Under this statutory scheme, it is hardly surprising that judicial review of EPA actions sometimes results in circuit court rulings that are inconsistent with other circuit court rulings applicable to different EPA regions. As we explain below, the Amended Regulations reflect permissible and sensible solutions to issues

emanating from intercircuit conflicts and agency nonacquiescence. We therefore defer to EPA's reasonable construction of the statute and deny the petitions for review.

## I. BACKGROUND

EPA is run by an Administrator, whose office is located in Washington, D.C. The agency also has ten regional offices, each of which is responsible for administering agency programs within the states in a designated region. "The Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under [the Act] . . . [and] may delegate to any officer or employee of the Environmental Protection Agency such of his powers and duties under [the Act], except the making of regulations subject to section 7607(d) of this title, as he may deem necessary or expedient." 42 U.S.C. § 7601(a)(1). In addition, the Act requires the Administrator to "promulgate regulations establishing general applicable procedures and policies for regional officers and employees (including the Regional Administrator) to follow in carrying out a delegation." *Id.* § 7601(a)(2).

The Act also provides that regulations with respect to delegations under § 7601(a)(1) must be designed

> (A) to assure fairness and uniformity in the criteria, procedures, and policies applied by the various regions in implementing and enforcing the chapter;
>
> . . . and
>
> (C) to provide a mechanism for identifying and standardizing inconsistent or varying criteria, procedures, and policies being employed by such officers and employees in implementing and enforcing the chapter.

*Id.* § 7601(a)(2). Over the years, EPA Administrators have made many such delegations to facilitate agency operations.

As noted above, judicial review of EPA actions is bifurcated between petitions for review that must be filed in the United States Court of Appeals for the D.C. Circuit and petitions that may be filed in the regional circuit courts. The Act provides:

> A petition for review of action of the Administrator in promulgating any . . . nationally applicable regulations promulgated, or final action taken, by the Administrator . . . may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

*Id.* § 7607(b)(1); *see also Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 878–80 (D.C. Cir. 2015) (discussing the jurisdiction and venue provisions under the Clean Air Act). The Petitioners acknowledge that this statutory scheme "creates the possibility of geographically inconsistent judicial decisions on [Act] issues," because different circuits may reach different results on the same question. Pet'rs' Br. 22.

As outlined in the introduction to this opinion, the dispute in this case stems from the Sixth Circuit's decision in *Summit*. That case resolved a challenge to EPA's interpretation of the word "adjacent," an interpretation the Sixth Circuit rejected. 690 F.3d at 735. EPA then issued the aforementioned *Summit* Directive in which the agency made it clear that it would not follow *Summit* in EPA regions outside of the Sixth Circuit. One of the Petitioners here challenged the *Summit* Directive in this court in *NEDACAP I*, arguing that the directive violated EPA's consistency obligations under both § 7601(a)(2) and the agency's then-effective regulations. 752 F.3d at 1003.

The consistency regulations that were at issue in *NEDACAP I* read, in relevant part, as follows:

It is EPA's policy to:

(a) Assure fair and uniform application by all Regional Offices of the criteria, procedures, and policies employed in implementing and enforcing the act; [and]

(b) Provide mechanisms for identifying and correcting inconsistencies by standardizing criteria, procedures, and policies being employed by Regional Office employees in implementing and enforcing the act . . . .

*NEDACAP I*, 752 F.3d at 1004 (quoting 40 C.F.R. § 56.3 (2012)). We upheld the challenge to the *Summit* Directive because we saw the consistency regulations as implying "that EPA was obligated to respond to the *Summit Petroleum* decision in a manner that eliminated regional inconsistency." *Id.* at 1011. We concluded that EPA's then-current "regulations preclude[d] EPA's inter-circuit nonacquiescence . . . and [that] the *Summit* Directive [was] therefore contrary to law." *Id.* We

declined to determine whether the *Summit* Directive also violated the Act. *Id.*

The decision in *NEDACAP I* made it clear that EPA had options other than following the command of *Summit* nationwide, including an option to "revise its uniformity regulations to account for regional variances created by a judicial decision or circuit splits." *Id.* at 1010. EPA heeded these words and promptly issued a notice of proposed rule making.

In August 2015, EPA published and solicited public comment on a proposal to amend the old consistency regulations to address "how to treat Federal court decisions regarding locally or regionally applicable actions that may affect consistent application of national programs, policy, and guidance." Amendments to Regional Consistency Regulations, 80 Fed. Reg. 50,250, 50,252 (Aug. 19, 2015) (to be codified at 40 C.F.R. pt. 56). In August 2016, EPA issued the Amended Regulations that are now before us.

The Amended Regulations read in relevant part as follows:

It is EPA's policy to:

(a) Assure fair and uniform application by all Regional Offices of the criteria, procedures, and policies employed in implementing and enforcing the act;

(b) Provide mechanisms for identifying and correcting inconsistencies by standardizing criteria, procedures, and policies being employed by Regional Office employees in implementing and enforcing the act; and

. . . .

(d) Recognize that only the decisions of the U.S. Supreme Court and decisions of the U.S. Court of Appeals for the D.C. Circuit Court that arise from challenges to "nationally applicable regulations . . . or final action," as discussed in Clean Air Act section 307(b) (42 U.S.C. 7607(b)), shall apply uniformly, and to provide for exceptions to the general policy stated in paragraphs (a) and (b) of this section with regard to decisions of the federal courts that arise from challenges to "locally or regionally applicable" actions, as provided in Clean Air Act section 307(b) (42 U.S.C. 7607(b)).

40 C.F.R. § 56.3(a), (b), (d). In § 56.4, EPA added a provision stating that

[t]he Administrator shall not be required to issue new mechanisms or revise existing mechanisms developed under paragraphs (a) of this section to address the inconsistent application of any rule, regulation, or policy that may arise in response to the limited jurisdiction of either a federal circuit court decision arising from challenges to "locally or regionally applicable" actions, as provided in Clean Air Act section 307(b) (42 U.S.C. 7607(b)), or a federal district court decision.

*Id.* § 56.4(c). Finally, EPA revised § 56.5 so that a regional office need not seek headquarters' concurrence in order to depart from EPA policy if that departure is required in order to act in accordance with a federal court decision. *Id.* § 56.5(b).

Petitioners timely filed petitions for review of the Amended Regulations.

## II. ANALYSIS

### A. *Standard of Review*

Petitioners' challenge to EPA's interpretation of the Act is governed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron* step one, we must first decide "whether Congress has directly spoken to the precise question at issue." *Id.* at 842; *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) ("[W]e begin with the language of the statute[;] . . . [i]f the . . . language is unambiguous and the statutory scheme is coherent and consistent . . . the inquiry ceases."). If the statutory provision in question is "silent or ambiguous with respect to the specific issue," we then assess the matter pursuant to *Chevron* step two to determine whether EPA's interpretation is "based on a permissible construction of the statute." 467 U.S. at 843. *See generally* EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW: REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 211–22 (3d ed. 2018).

The court may also set aside EPA action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory . . . authority." 42 U.S.C. § 7607(d)(9). "To determine whether EPA's rules are 'arbitrary and capricious,' we apply the same standard of review under the Clean Air Act as we do under the Administrative Procedure Act." *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000). That standard requires us to "affirm the EPA's rules if the agency has considered the relevant factors and articulated a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.*

*Ins. Co.*, 463 U.S. 29, 43 (1983)). *See generally* EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW, *supra*, at 259–67.

**B.** *Petitioners' Challenges*

Petitioners challenge the Amended Regulations on four grounds. First, they argue that § 7601(a)(2) precludes the use of intercircuit nonacquiescence. Petitioners contend that this statutory provision requires EPA to implement the Act uniformly nationwide and establish a mechanism for resolving inconsistencies created by court decisions. Second, Petitioners claim that even if § 7601(a)(2) is ambiguous, the Amended Regulations rely on an unreasonable interpretation of the Act. Third, Petitioners contend that the Amended Regulations are arbitrary and capricious in allowing exceptions to EPA policy for court-created inconsistencies. Finally, Petitioners insist that because *NEDACAP I* held that intercircuit nonacquiescence violated regulations whose language resembles the statutory provision we now construe, the two cases cannot be distinguished and judgment in this case must follow its predecessor. For the reasons indicated below, we reject these arguments.

*1. Section 7601(a)(2) Does Not Apply to Judicially Created Inconsistencies*

Petitioners argue that because the Amended Regulations tolerate court-created inconsistencies in the application of agency policies, the regulations clearly violate § 7601(a)(2) and, therefore, cannot survive review under *Chevron* step one. In other words, Petitioners suggest that because the Act admits of plain meaning, EPA's construction of § 7601(a)(2) fails under *Chevron* step one. Petitioners' view is misguided.

"In addressing a question of statutory interpretation, we begin with the text." *City of Clarksville v. FERC*, 888 F.3d 477,

482 (D.C. Cir. 2018). In order to resolve the dispute at *Chevron* step one, we must determine whether "the intent of Congress is clear," meaning that the statutory provision at issue is "unambiguous[]" with respect to the question presented. *Chevron*, 467 U.S. at 842–43. This requires that the governing statute, read "as a whole," reveal a clear congressional intent regarding the relevant question, *see, e.g.*, *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 41 (1990), or that "the text [of the statute] and reasonable inferences from it give a clear answer," *Brown v. Gardner*, 513 U.S. 115, 120 (1994). We certainly can make no such findings in this case.

What is most noteworthy here is that nothing in the language of § 7601(a) addresses judicially created inconsistencies in the application of EPA policies. Indeed, the fairness and uniformity requirements of § 7601(a)(2) apply only to EPA regulations promulgated for "regional officers and employees (including the Regional Administrator) to follow *in carrying out a delegation* under paragraph (1), if any." 42 U.S.C. § 7601(a)(2) (emphasis added). As relevant here, paragraph (1) limits the Administrator to delegating his or her "powers and duties under this chapter." *Id.* § 7601(a)(1). The Amended Regulations, however, excuse departure from EPA policy only to the extent "required in order to act in accordance with a federal court decision." 40 C.F.R. § 56.5; *see also id.* §§ 56.3–56.4.

Petitioners acknowledge, as they must, that the Administrator cannot defy a controlling federal court decision in any EPA region that falls within that court's jurisdiction. The Administrator has no such "power" or "duty" under the Act. In other words, the agency is required to obey such a judicial decision without regard to any delegation of powers or duties from the Administrator. Section 7601(a)(2) does not require regulations authorizing such obedience. Nor does the Act

purport to allow the Administrator to delegate authority to subordinate officials to ignore binding judicial decisions. In short, because the Administrator does not have any "powers" to disobey court decisions issued within EPA regions, § 7601(a) does not even allow for the issuance of such regulations. *And § 7601(a)(2) does not come into play in the absence of an Administrator's lawful delegation.* Therefore, the plain language of the Act surely does not support Petitioners' position.

Furthermore, the disputed provisions in the Amended Regulations do not purport to delegate any of the Administrator's powers. Rather, they provide that EPA regional offices are not required to seek headquarters approval "for actions that may result in inconsistent application if such inconsistent application is required in order to act in accordance with a federal court decision." 40 C.F.R. § 56.5(b). Again, where an action is required by a court, no delegation of the Administrator's "powers" has taken place.

"The plainness or ambiguity of statutory language" must be measured with reference to, among other things, "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Petitioners concede that the Act, by its terms, allows for inconsistent judicial decisions. As already noted, petitions for review of purely local or regional EPA actions must be filed in the appropriate circuit court. 42 U.S.C. § 7607(b)(1). Petitions regarding nationally applicable issues must be filed in this court. *Id.* Congress obviously meant to curb inconsistencies with respect to "nationally applicable regulations promulgated, or final action taken, by the Administrator" by channeling all such challenges to the D.C. Circuit. *Id.* However, no such provision was enacted for agency actions that are purely "locally or regionally applicable." *Id.*

The potential for intercircuit inconsistency is therefore an inevitable consequence of the Act's judicial review provision.

Petitioners argue that § 7601(a) was intended to resolve the problem of inconsistent judicial decisions generated by § 7607. They contend that the Amended Regulations thus violate § 7601(a)(2) because they do not promote uniformity, but rather permit regional offices to take actions that may result in inconsistent application of the Act "if such [action] is required in order to act in accordance with a federal court decision." 40 C.F.R. § 56.5(b). However, as already noted, reducing inconsistencies generated by different judicial decisions in different regions is not the aim of § 7601(a).

Petitioners' arguments seem to imply that EPA's construction of § 7601(a) cannot be credited because intercircuit conflicts are inherently bad and, therefore, we should not assume that Congress meant to enact such a statutory scheme. On this point, it is sufficient to say that Petitioners' views on the values of intercircuit conflicts are shortsighted. *See* Samuel Estreicher & Richard L. Revesz, *Nonacquiescence by Federal Administrative Agencies*, 98 YALE L.J. 679, 735–36 (1989) (contending that "[g]iven the lack of intercircuit stare decisis, and the reasons underlying our system of intercircuit dialogue, an agency's ability to engage in intercircuit nonacquiescence should not be constrained").

In any event, the main point here is that § 7601(a)(2) addresses only delegation-created inconsistencies, whereas § 7607(b)(1) obviously allows for judicially created inconsistencies. Contrary to what Petitioners suggest, these two provisions do not intersect. Indeed, in their brief to this court, Petitioners concede that § 7601(a)(2) was meant to address delegation-created inconsistencies, not judicially created inconsistencies. Pet'rs' Br. 2–3.

In sum, Petitioners cannot prevail under the first step of *Chevron* because the plain meaning of the Act does not support their claims. Section 7601's uniformity obligations do not address court-created inconsistencies. They instead apply solely to regulations governing delegations of the Administrator's powers. Obedience to a controlling court decision involves no such delegation. Because the Amended Regulations merely acknowledge what the law requires, *i.e.*, obedience to controlling court decisions, § 7601's uniformity obligations do not apply.

2. *EPA Permissibly and Reasonably Interpreted the Act to Allow Intercircuit Nonacquiescence*

Petitioners' arguments also fail under *Chevron* step two. "*Chevron* recognized that [t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 55–56 (2011). A court has no authority to "substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency" when the agency is acting pursuant to congressionally delegated authority. *Chevron*, 467 U.S. at 844. "*Chevron*'s premise is that it is for agencies, not courts, to fill statutory gaps." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

As explained above, intercircuit conflicts in the application of EPA policies caused by inconsistent judicial decisions are inevitable because of the Act's judicial review provision in § 7607(b)(1). The Act does not instruct EPA how to address such intercircuit conflicts or how to implement the "fairness" and "uniformity" provisions of § 7601(a)(2).

However, EPA has the delegated authority to enforce these statutory provisions and to fill any perceived gaps in the statute. In our view, the Amended Regulations reasonably fill the statutory gaps, and, therefore, EPA's construction of the Act is entitled to deference.

In its brief to this court, EPA usefully and accurately summarized the Amended Regulations:

*First*, EPA promulgated an exception to the agency's policy of uniformity, acknowledging existing agency practice that a federal court decision adverse to EPA that arises from a challenge to a locally or regionally applicable agency action will not "automatically" apply uniformly nationwide. EPA also codified its longstanding position that, consistent with the structure and purpose of the Act's judicial review provision, 42 U.S.C. § 7607(b)(1), only decisions of the Supreme Court and decisions of this Court that arise from challenges to nationally applicable regulations or final agency action would necessarily apply uniformly.

*Second*, EPA added a provision that its headquarters need not issue mechanisms or revise existing mechanisms to address every "inconsistent application of any rule, regulation, or policy that may arise in response to the limited jurisdiction of either a federal circuit court decision arising from challenges to 'locally or regionally applicable' actions . . . or a federal district court decision."

*Third*, EPA clarified that a regional office no longer needs to seek concurrence from headquarters to diverge from national policy if such regional action is required in certain states "to act in accordance with"

an adverse federal court decision that arises locally or regionally.

Resp't's Br. 10–11. EPA also makes the compelling point that

> Congress did not purport to forecast all the unique and unpredictable variables associated with regional court decisions, particularly when they opine on national policy. Section 7601(a)(2) is entirely silent on this more complex subject matter, and it is plausible (at the very least) for the agency to read section 7601(a)(2) as focusing on improving the consistency of actions that EPA regions take in the *absence* of judicial decisions.

Resp't's Br. 30. We agree. Overall, EPA's construction of § 7601(a) is not only permissible but eminently reasonable.

Petitioners struggle to articulate what regulatory provisions EPA should have included in place of the Amended Regulations. They appear to endorse the view that the Amended Regulations should require the agency to petition the Supreme Court for review of adverse judicial decisions, or require EPA's General Counsel to consult with the regions about how to handle court decisions that are at odds with EPA's national rules. None of these suggestions would make much of a dent in the inconsistencies inherently generated by § 7607, which further suggests that § 7601 was not aimed at such inconsistencies.

Moreover, Petitioners' suggestions do not involve powers delegated by the Administrator to the regions, and hence would not be promulgated under § 7601 in any event. Regional officers cannot petition for certiorari. Nor does any remedy involving EPA's General Counsel come within a delegation of power to a regional office. Rather, regulations addressing these

issues may come within the compass of other authority granted to the Administrator to constrain EPA actions. We do not foreclose the possibility that some other statutory provision, not addressed by Petitioners, might require some such procedures.

Petitioners' ostensible parade of horribles – a potentially national thicket of inconsistent decisions – is overblown, to say the least. If no party is able to overturn an inconsistency-creating decision through a petition for rehearing, en banc review, or certiorari to the Supreme Court, EPA obviously will be in a position to consider initiating a rule making procedure to resolve the conflict, or take other final agency action that has the force of law. Alternatively, a petitioner with standing may petition for rule making should EPA fail to initiate such a proceeding.

The simple point here is that the statute clearly contemplates some splits in the regional circuits. There is nothing in the statute to indicate that EPA is bound to change its rules nationwide each time a regional circuit court issues a decision that is at odds with an EPA rule. Were this the case, then the first court of appeals to address an issue would determine EPA's policy nationwide. And that would make no sense because only the D.C. Circuit has jurisdiction to hear and decide cases involving "nationally applicable regulations" or cases in which the action is "based on a determination of nationwide scope or effect." The implication of Petitioners' position – that EPA must conform its policies nationwide to the first circuit decision disagreeing with an agency rule – is illogical, and plainly inconsistent with the Act's judicial review provision. In fact, it is even worse than that, because if a second (or third, etc.) circuit were to disagree with that first mover, EPA would be forced to change its rules again to avoid a lack

of uniformity, if that were even possible. There is certainly no statutory requirement that EPA follow such an approach.

Petitioners' arbitrary and capricious challenge fails for much the same reason as their *Chevron* step two challenge. As EPA has explained, the Amended Regulations codify obedience to the law and preserve § 7607(b)(1)'s two-track system of judicial review. Petitioners' claim that EPA has not always been consistent in applying a practice of intercircuit nonacquiescence is immaterial. In this case, EPA need only show "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). EPA has done this, and Petitioners offer no good reason to compel a different approach.

### 3. *Petitioners' Argument that* NEDACAP I *Controls this Case*

*NEDACAP I* held that intercircuit nonacquiescence violated the previous consistency regulations because those regulations "implie[d] that EPA was obligated to respond to the *Summit Petroleum* decision in a manner that eliminated regional inconsistency." 752 F.3d at 1011. Petitioners argue that because those regulations largely mirrored § 7601(a)(2)(A) and (C) (the statutory language we construe here), *NEDACAP I* compels us to interpret the statute likewise. While this point is superficially plausible, it has two notable flaws.

First, to the extent the parties and decision in *NEDACAP I* examined the Act, they did so solely with respect to § 7601(a)(2)(A) and (C), and did not analyze how § 7601(a)(1) and (2) limit application of the uniformity obligations to powers delegated by the Administrator. As explained above, because the Administrator cannot disobey a controlling court

decision, compliance with such decisions involves no delegation of power under the Act and thus does not trigger § 7601(a)(2)'s obligations.

Second, *NEDACAP I* specifically stated that "EPA might . . . revise its . . . regulations to account for regional variances created by a judicial decision or circuit splits." *NEDACAP I*, 752 F.3d at 1010. It is implausible that *NEDACAP I* invited regulations its own holding would invalidate. Indeed, had *NEDACAP I* assessed the *Summit* Directive solely vis-à-vis § 7601(a)'s strictures, and without reference to the then-effective regulations, the result would have been completely different. But *NEDACAP I* did not examine that issue.

Nevertheless, we recognize that the prior consistency regulations resembled § 7601(a)(2). To avoid any confusion going forward, we now make it clear that, to the extent *NEDACAP I* can be read to suggest that § 7601(a)(2) bars EPA from adopting reasonable regulations endorsing intercircuit nonacquiescence – as EPA did in promulgating the Amended Regulations – the decision is mistaken.[*]

### III. CONCLUSION

For these reasons, we deny the petitions for review.

*So ordered.*

---

[*] Because our holding today might be viewed as inconsistent with some of the discussion in *NEDACAP I*, this opinion has been circulated to and approved by all of the active members of the court, and thus constitutes the law of the circuit. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981).

SILBERMAN, *Senior Circuit Judge*, concurring: I fully agree with the court's opinion. I write separately to point out that the EPA can often rather easily mitigate the inter-circuit non-acquiescence problem – and it should. Section 7607 provides that any EPA action that can be challenged in a regional circuit, because ostensibly regionally applicable, should nevertheless be brought only in our Circuit if the "action is based on a determination of nationwide scope or effect" and if the Administrator finds and publishes that such action is based on such determination. 42 U.S.C. § 7607(b)(1).

In the case of *Summit Petroleum Corp. v. EPA*, 690 F.3d 733 (6th Cir. 2012) – which started this whole donnybrook – EPA, in accordance with its regulations, responded to a request to the Administrator for a determination whether a number of natural gas facilities were "adjacent" and thereby constituted a single "major source" (which would impose a regulatory burden). None of the various locations shared a common boundary with one another, and they were scattered across 43 square miles. Nevertheless, EPA determined that the facilities were regarded as "adjacent" under its regulations, pointing to a memorandum prepared by its then-Assistant Administrator, Gina McCarthy (subsequently appointed Administrator). *See* Memorandum from Gina McCarthy, Assistant Adm'r, to Reg'l Adm'rs Regions I-X (Sept. 22, 2009). That was a reversal of EPA's previous position which interpreted "adjacent" geographically – not functionally. There is little question that, although this interpretation was applied first to a single set of facilities in the *Summit* case, it constituted an interpretation of "nationwide scope and effect." Therefore, it seems to me that the EPA Administrator should have so declared, and then any challenge should have been brought to the D.C. Circuit. Instead, Summit petitioned for review in the Sixth Circuit, leading to the national uncertainty that NEDACAP decries in the case before us.

It is clear that Congress, by empowering the EPA Administrator to publish a finding that an action is "based on a determination of nationwide scope or effect," delegated unusual authority to control the venue of judicial review. But her exercise of that authority is not unreviewable. Any circuit court, including the D.C. Circuit, could reject EPA's determination that an issue is of national importance as arbitrary and capricious under the APA. And conversely, a failure of EPA to so declare in an appropriate case could also be challenged by a party with standing – like NEDACAP here – who desired uniformity of national regulation, so long as it had first petitioned EPA to publish the necessary finding.

In *Summit*, the question as to whether the case belonged in the D.C. Circuit did not arise. But the Fifth Circuit has concluded that whether or not an issue is of nationwide scope and effect is only a venue question that it could determine *de novo*, without any deference to EPA. *See Texas v. EPA*, 829 F.3d 405, 417-22 (5th Cir. 2016). I think that opinion is quite wrong. To be sure, we have said that the question whether a case challenging EPA's action should be brought in a regional circuit or before us is not jurisdictional. *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879-80 (D.C. Cir. 2015). Nevertheless, it is more than the ordinary venue issue – which typically involves such questions as the convenience of the parties. Here it is the legislative provision that directs regional issues to regional circuits, and national issues to our circuit for uniform resolution. As such, it is venue plus; it approaches jurisdiction. Thus, while the EPA Administrator's determination does not escape review under the APA's arbitrary and capricious standard, it certainly should be entitled to deference. Indeed, I think deference in this situation should be particularly generous because the Administrator, as the national regulator, is in a much

better position than a regional circuit court to evaluate the nationwide impact of her action. Congress recognized that comparative advantage by delegating this unusual authority to an administrative agency.

Finally, as the court recognizes, it is possible that an issue of nationwide scope or effect could emerge unanticipated in an enforcement action in district court. Perhaps the purpose of the Congressional scheme would be followed, in that event, by the Administrator declaring the issue national, thereby channeling any appeal to the D.C. Circuit. Similarly, if a petition for review had already been filed in a geographical circuit and the EPA Administrator promptly followed with her national declaration, it would seem logical that the case should then be transferred to the D.C. Circuit – though it remains an open question how § 7607(b)(1) deals with retroactivity. All of these procedural pathways can and should work together to give effect to what I understand to be a clear Congressional mandate: uniform judicial review of regulatory issues of national importance.