# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 14, 2022   Decided May 26, 2023

No. 21-1268

MICHAEL LISSACK,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

On Appeal from a Decision
of the United States Tax Court

*Erica L. Brady-Gitlin* argued the cause for appellant. With her on the briefs were *Gregory S. Lynam* and *Scott A. Knott*.

*Brian C. Wille* and *Usman Mohammad* were on the brief for *amicus curiae* Whistleblower 1109-13W in support of appellant.

*Dean Zerbe* and *Stephen M. Kohn* were on the brief for *amicus curiae* National Whistleblower Center in support of appellant.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Bruce R. Ellisen*, Attorney.

Before: PILLARD and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:    Section 7623 of the Internal Revenue Code authorizes the IRS to pay awards to whistleblowers who identify underpayment of taxes or violations of internal revenue law.  The provision at issue here, subsection 7623(b)(1), mandates awards for whistleblowers who provide the IRS with information that makes a substantial contribution to a tax adjustment.  It calls for awards of between 15 and 30 percent of proceeds the IRS collects "as a result of" an "administrative or judicial action" that is "based on information" provided by a whistleblower.    I.R.C. § 7623(b)(1).  The IRS's "determination of the amount of such award" depends on the extent to which a whistleblower "substantially contributed" to the administrative action.  *Id.*  A Treasury regulation interpreting the statute allows the IRS to treat investigations into unrelated tax issues of the same taxpayers as separate "administrative action[s]."  26 C.F.R. § 301.7623-2(a)(2), (b)(2) (Example 2).  Appellant Michael Lissack claims the IRS owes him a whistleblower award under subsection 7623(b)(1), and he argues that the Treasury regulation on which the IRS relied to decide otherwise contravenes the text of the statute.

Lissack submitted information to the IRS that he thought showed that a condominium development group evaded taxes through its treatment of golf-club-membership deposits.  The IRS deemed the information Lissack submitted sufficiently specific and credible to warrant opening an examination, but later concluded that the membership deposits were correctly reported.  Through its own further investigation, however, the IRS discovered an unrelated problem:  The same development

group had taken an impermissible deduction on intercompany bad debt. The IRS eventually ordered the development group to pay a large adjustment relating to its treatment of that debt, but it denied Lissack's claim for a percentage of those proceeds. When Lissack sought review of that decision, the Tax Court granted summary judgment to the IRS. Lissack appeals to us, and the IRS primarily argues that the Tax Court lacked jurisdiction to review its award denial, even as it defends its rule and its application to Lissack's case.

We hold that the Tax Court had jurisdiction and that the challenged provisions of the rule are consistent with the tax whistleblower statute. Because the IRS Whistleblower Office's denial of an award to Lissack rests on a reasonable application of a valid rule to the facts reflected in the administrative record, we affirm.

## BACKGROUND

### A.

The Internal Revenue Service (IRS or Service) has authority under Internal Revenue Code Section 7623 to pay awards to whistleblowers who help the Service identify and collect underpaid taxes. Congress first granted that authority to the Secretary of the Treasury in 1867. Act of March 2, 1867, Pub. L. No. 39-169, § 7, 14 Stat. 471, 473. Until 2006, any such whistleblower award was at the discretion of the IRS. *See* Taxpayer Bill of Rights 2, Pub. L. 104-168, § 1209, 110 Stat. 1452, 1473 (1996); *Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183, 186 (2011). Under the discretionary regime, the Service was not bound by the statute or regulations to pay any whistleblowers and, when it chose to do so, the amount was within its sole discretion; there was no provision for judicial review.

In 2006, Congress amended the tax whistleblower statute. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 406, 120 Stat. 2922, 2958-60 (2006 Act). The amendment added subsection (b) to make some whistleblower awards mandatory, *id.*; I.R.C. § 7623(b), even as it retained in subsection (a) the IRS's longstanding authority to make discretionary awards to people who help in "detecting underpayments of tax," or "detecting and bringing to trial and punishment" persons who violate internal revenue laws, I.R.C. § 7623(a). The 2006 Act also created the IRS Whistleblower Office, empowered it to determine award amounts, and established a right to appeal any Whistleblower Office award "determination" to the Tax Court. § 406, 120 Stat. at 2958-60; I.R.C. § 7623(b)(4). This appeal turns on the meaning of the mandatory-award provision (subsection (b)(1)) and the judicial-review provision (subsection (b)(4)).

Under the mandatory-award provision, a whistleblower "shall . . . receive" an award if the IRS "proceeds with any administrative or judicial action described in subsection (a)"— *i.e.*, detecting underpayments or detecting and bringing evaders to judgment—"based on information brought to the Secretary's attention by" the whistleblower. I.R.C. § 7623(b)(1). (For convenience in this appeal, which involves only administrative action against a taxpayer, we use the shorthand "administrative action" rather than "administrative . . . action," and "proceeds based on," rather than "proceeds . . . based on," when quoting subsection 7623(b)(1).) A mandatory award under subsection (b)(1) must be 15 to 30 percent "of the proceeds collected as a result of the action (including any related actions)," or from a settlement. *Id.* Within that range, the amount of a mandatory award "shall depend upon the extent to which the individual substantially contributed to such action." *Id.*

5

The judicial-review provision states: "Any determination regarding an award under paragraph [(b)](1) . . . may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." *Id.* § 7623(b)(4). We recently held that a reviewable "determination regarding an award" within the meaning of that section, *id.*, does not include the Whistleblower Office's "threshold rejection" of a whistleblower's submission "for vague and speculative information" in advance of any referral to the IRS for examination, *Li v. Comm'r*, 22 F.4th 1014, 1017 (D.C. Cir. 2022). In this appeal, the IRS argues that the Tax Court lacked jurisdiction because, in its view, the logic of *Li* means the letter denying Lissack's claim also was not a reviewable determination under subsection (b)(4).

**B.**

Lissack challenges three parts of a Treasury Department regulation we refer to as the Whistleblower Definitions Rule: (1) the definition of "administrative action," (2) one of the examples illustrating what counts as the Service "proceed[ing]" with an administrative action "based on" whistleblower information, and (3) the definition of "related action." 26 C.F.R. § 301.7623-2(a)(2), (b)(2) (Example 2), (c)(1).

Recall that an award is mandatory under the statute if the IRS "proceeds with any administrative or judicial action" that is "based on" the whistleblower's information. I.R.C. § 7623(b)(1). The Rule defines "administrative action" to mean "all or *a portion of* an Internal Revenue Service (IRS) civil or criminal proceeding against any person that may result in collected proceeds, . . . including, for example, an examination, a collection proceeding, a status determination proceeding, or a criminal investigation." 26 C.F.R.

§ 301.7623-2(a)(2) (emphasis added). That definition allows the IRS to divide examinations into discrete segments raising distinct tax issues, and to treat each as a separate administrative action.

In defining how the Service "proceeds" with an action "based on" whistleblower information, I.R.C. § 7623(b)(1), the Rule distinguishes IRS administrative actions subject to the mandatory-award provision from those not triggering such awards: The IRS "proceeds based on information provided by a whistleblower when the information provided substantially contributes to an action against a person identified by the whistleblower." 26 C.F.R. § 301.7623-2(b)(1). When the IRS "initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided," it "proceeds based on" the whistleblower submission. *Id.*

The regulatory definitions of "administrative action" and "proceeds based on" work together. These provisions allow the IRS to consider investigations into tax issues unrelated to the whistleblower submission as separate administrative actions. The upshot is that a whistleblower whose information may have "substantially contributed" to a fruitless action against a person is not entitled to share proceeds from a distinct action against that same person that did not draw on the whistleblower's information. As the agency explained in the preamble to the final regulations, "the tax administration process is a long and multi-faceted one that may extend over the course of many years and may involve multiple substantial contributions from different sources." Awards for Information Relating to Detecting Underpayments of Tax or Violations of the Internal Revenue Laws, 79 Fed. Reg. 47,246, 47,262/3 (Aug. 12, 2014) (codified at 26 C.F.R. pt. 301). In cases

involving multiple tax issues, treating each distinct tax issue as a separate "administrative action" enables the IRS to calibrate whether and to what extent a recovery was "based on" a whistleblower's tip "by reference to just the discrete and relevant portion of the examination to which the information provided relates." *Id*. at 47,250/3.

The Whistleblower Definitions Rule includes some examples illustrating rule applications. The challenged Example Two to the definition of "proceeds based on" describes cases in which the IRS's investigation of a whistleblower submission uncovers "additional facts that are unrelated to the activities described in the information provided by the whistleblower," leading the Service to examine issues other than those the whistleblower identified. 26 C.F.R. § 301.7623-2(b)(2) (Example 2). In those circumstances, the Rule explains, "[t]he portions of the IRS's examination . . . relating to the additional facts obtained" through the Service's independent investigative measures "are not actions with which the IRS proceeds *based on* the information provided by the whistleblower because the information provided did not substantially contribute to the action." *Id*. (emphasis added).

The Whistleblower Definitions Rule also interprets the statutory term "related actions." I.R.C. § 7623(b)(1). Recall that the mandatory-award provision of the tax whistleblower statute states that a whistleblower shall receive a percentage of "the proceeds collected as a result of the action (including *any related actions*)." *Id*. (emphasis added). Under the Whistleblower Definitions Rule, "the term related action means an action against a person other than the person(s) identified in the information provided and subject to the original action(s)," so long as the action against the additional person has a regulatorily specified nexus to the original action. 26 C.F.R. § 301.7623-2(c)(1). That definition does not treat

8

action on a distinct issue as "related" to action on a whistleblower's information just because it involves the same taxpayer, even if the IRS discovered the issue only because the whistleblower led it to audit that taxpayer.

## C.

In 2009, Michael Lissack filed with the IRS Whistleblower Office an Application for Award for Original Information (Form 211). He submitted almost 200 pages of material identifying a condominium development group and showing why he thought it had underpaid its taxes on golf club memberships. Lissack contended that, after making membership deposits nonrefundable in 2008, the development group should have reported the retained deposits to the IRS as gross income.

Lissack's information led to an IRS examination into the development group. A senior tax analyst in the Whistleblower Office determined that Lissack's submission identified a tax issue and referred it to the IRS Large Business and International Division. A revenue agent in that division opened an investigation into Lissack's information and sent progress reports to the Whistleblower Office. In a 2011 report, the revenue agent explained that, before receiving Lissack's submission, the IRS had not planned to investigate the development group, but the information Lissack provided "was sufficient to warrant beginning of examination." *Lissack v. Comm'r*, 157 T.C. 63, 66 (2021). In other words, the revenue agent acknowledged that Lissack's submission was the reason the IRS opened an examination. The following month, the revenue agent reported that he had fully researched the membership-deposit tax issue and concluded that the development group reported the deposits correctly. The agent further reported that, during his investigation, he discovered a

different tax issue that was "unrelated to the subject of the whistleblower claims": a $60 million deduction that the development group took for "bad debt," meaning a business debt that the company characterized as worthless and deducted from gross income. *Id.*; *Topic No. 453, Bad Debt Deduction*, IRS, https://perma.cc/VN67-LGGF (last updated Apr. 27, 2023). In 2013, the revenue agent finished the examination and ordered several tax adjustments, the largest of which was for the $60 million bad-debt deduction. The agent reported that Lissack did not "provide[] *any* information for the adjusted issues." *Lissack*, 157 T.C. at 66; *see* J.A. 59 (Declaration of Whistleblower Office Analyst).

In 2017, the Whistleblower Office denied Lissack's claim for an award. In the final determination letter, the Whistleblower Office informed Lissack that his claim was denied "because the IRS took no action on the issues you raised." J.A. 16. "After receipt of your information," the letter explained, "the IRS initiated an examination" of the development group, "and the IRS reviewed the information you provided as part of that examination. However, that review did not result in the assessment of additional tax, penalties, interest or additional amounts with respect to the issues you raised." J.A. 16. Finally, the letter informed Lissack that the IRS did assess additional taxes against the taxpayer, "but the information you provided was not relevant to those issues." J.A. 16.

Lissack petitioned the Tax Court to review the Whistleblower Office's adverse decision on his application for an award. The IRS moved for summary judgment based on the relevant portion of the administrative record and a declaration from the Whistleblower Office analyst assigned to Lissack's claim. Lissack filed a cross-motion for partial summary judgment, arguing the Service misapplied its own rule and

challenging certain provisions of the Whistleblower Definitions Rule as contrary to the statute. In his opposition to the IRS's summary judgment motion, Lissack argued that the administrative record was incomplete because the IRS had redacted too many documents in the administrative file.

In the decision now under review, the Tax Court granted summary judgment in full in favor of the IRS. In a carefully reasoned opinion, the Tax Court held that, although the IRS "did initiate an action" based on the information Lissack provided regarding membership deposits, he "is not eligible for a whistleblower award" because "the IRS did not collect any proceeds 'as a result of th[is] action'" or any "related action." *Lissack*, 157 T.C. at 69-70 (alteration in original) (quoting I.R.C. § 7623(b)(1)), 72, 76. The undisputed facts showed that Lissack "supplied no information to the IRS about [the development group's] intercompany bad debt deduction," so he was not entitled to a percentage of the proceeds collected in that action. *Id.* at 71.

In granting summary judgment, the Tax Court had "no difficulty concluding that the regulation passes muster" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Lissack*, 157 T.C. at 74. The court noted that the statute "does not describe or define an 'administrative or judicial action'" so, as relevant here, "leaves ample scope to the Secretary to define the term" to refer to "'all or a portion of' an IRS civil or criminal proceeding." *Id.* at 72 (quoting 26 C.F.R. § 301.7623-2(a)(2)). In other words, it saw the statutory language as ambiguous as to whether an expanded portion of an examination is a separate administrative action and as to what kinds of whistleblower contributions require an award. Given that ambiguity, the Tax Court held, the Whistleblower Definitions Rule reasonably interprets the

statutory terms "administrative action" and "proceeds based on." *Id.* at 75-76.

The Tax Court also rejected Lissack's remaining two arguments. First, the court held that the investigation into the bad debt was not a "related action," under the IRS's definition of that term, to the action on the membership-deposit issue Lissack identified. *Id.* at 76 (citing 26 C.F.R. § 301.7623-2(c)(1)). It was neither "against a person other than the person(s)" Lissack's information identified, nor were "[t]he facts relating to" the bad-debt action "substantially the same" as the membership-deposit facts Lissack provided. *Id.* (alteration in original) (quoting 26 C.F.R. § 301.7623-2(c)(1)). Second, the court held that the administrative record sufficed, providing "more than enough evidence to confirm that petitioner is not eligible for a mandatory award." *Id.* at 78. The Tax Court noted that this is a "record rule" case in which summary judgment ordinarily is decided based on an administrative record that "comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by one or more common law or statutory privileges." *Id.* at 77 (first quoting *Van Bemmelen v. Comm'r*, 155 T.C. 64, 79 (2020); and then quoting 26 C.F.R. § 301.7623-3(e)(1)). Although whistleblowers may file motions to compel production of documents and to supplement the record, the Tax Court noted, Lissack "filed no motion of either sort." *Id.* at 78.

Lissack moved to vacate or revise the summary judgment decision, and for reconsideration, but the Tax Court denied reconsideration. This appeal of the Tax Court decisions followed.

**DISCUSSION**

The IRS argues that the Tax Court lacked jurisdiction over Lissack's appeal, and in any event reached the correct result. Lissack counters that the Tax Court correctly exercised jurisdiction but erred in granting summary judgment to the IRS because the Whistleblower Definitions Rule conflicts with the statute, a genuine factual dispute remains over whether the revenue agent relied on Lissack's submission, and the administrative record was incomplete without the entire examination file. We hold that the Tax Court had jurisdiction, the Rule is consistent with the statute, and the Tax Court correctly decided summary judgment on a sufficient administrative record that Lissack never sought to supplement.

### A.    The Tax Court had jurisdiction.

"Any determination regarding an award under" subsection 7623(b)(1), (2), or (3), may be appealed to the Tax Court, which "shall have jurisdiction with respect to such matter." I.R.C. § 7623(b)(4). Our jurisdiction over the merits of Lissack's appeal, in turn, rests on the Tax Court having had jurisdiction. *Li*, 22 F.4th at 1015. We consider the jurisdictional question *de novo*, *Myers v. Comm'r*, 928 F.3d 1025, 1031 (D.C. Cir. 2019), and hold that the Tax Court had jurisdiction over Lissack's petition.

By its plain terms, subsection (b)(4)'s jurisdictional grant applies to "*[a]ny* determination regarding an award." I.R.C. § 7623(b)(4) (emphasis added). The Supreme Court has "repeatedly explained" that "the word 'any' has an expansive meaning." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 n.2 (2020)). "Similarly, the use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that

subject.'" *Id.* (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)). Congress thereby made generous provision for judicial review of Whistleblower Office award decisions.

The Service challenges the Tax Court's jurisdiction based on *Li v. Commissioner*, 22 F.4th 1014. We held in *Li* that a threshold rejection of a Form 211 (*i.e.*, an application for a mandatory award) was not a reviewable "award determination under subsection (b)(1)-(3)." *Id*. at 1016; *see id.* at 1017-18. The Whistleblower Office had concluded that Li's Form 211 provided only "vague and speculative information it could not corroborate, even after examining supplemental material Li herself did not provide," so the Office did not even forward Li's submission to an IRS examiner. *Id.* at 1017. We referred to the text of subsection (b)(1) to reason that a "threshold rejection of a Form 211 by nature means the IRS is not *proceeding* with an action against the target taxpayer," and that "[t]herefore, there is no award determination, negative or otherwise, and no jurisdiction for the Tax Court." *Id.* We expressly reserved in *Li* the question of jurisdiction in cases in which the Whistleblower Office "wrongly denied a Form 211 application" but the IRS "nevertheless proceeded against a target taxpayer based on the provided information." *Id.* at 1017 n.2.

The Service contends that our logic in *Li*—looking to when the IRS "proceeds with" an action *per* subsection (b)(1) as describing a jurisdictional prerequisite—compels us to likewise treat as jurisdictional a second requirement of subsection (b)(1): that the IRS have "collected proceeds" based on the whistleblower's information. IRS Br. 25. Because, in the Service's view of the merits, the proceeds it collected were not recovered in the administrative action it took in response to Lissack's submission, it asserts the Tax Court lacked

jurisdiction under subsection (b)(4) as interpreted in *Li*. In other words, as the IRS reads it, our decision in *Li* renders the jurisdictional grant coextensive with the merits of a whistleblower appeal. We disagree.

The fact that the IRS conducted an examination here suffices to distinguish Lissack's case from *Li*. Li never claimed that the IRS proceeded with any administrative or judicial action against the target taxpayer based on her submission. *Li*, 22 F.4th at 1017 n.2. Here, by contrast, there is no dispute that the Whistleblower Office referred Lissack's submission to the IRS, and an IRS revenue agent initiated an examination of the membership-deposits issue that Lissack identified. That referral and examination count as the IRS "proceed[ing] with" an "administrative action" that was "based on" the information Lissack brought to the Secretary's attention. I.R.C. § 7623(b)(1). And the "determination regarding an award" was the Whistleblower Office letter to Lissack informing him that the examination it initiated based on the information he provided did not result in the collection of any proceeds, so he was not entitled to an award.

In sum, contrary to the Service's position, the statute does not require a whistleblower to establish a meritorious claim to an award before the Tax Court may exercise jurisdiction to review the IRS's determination on that claim. An "unusually high degree of clarity" is required to treat statutory requirements as jurisdictional, *Myers*, 928 F.3d at 1035, and, as just explained, subsection (b)(4) does not clearly support the Service's reading. To hold otherwise would impute to Congress an intent to authorize appeals by whistleblowers who believe their awards are too low, but bar appeals by whistleblowers like Lissack who receive no award at all. To be sure, unless the IRS has made some adjustment, it is unclear what relief a whistleblower could be seeking. But the

Whistleblower Office in this case made substantial adjustments. The merits dispute is whether Lissack's concededly nonfrivolous submission entitles him to share in the IRS's recovery from the taxpayer he identified. We need not delineate the precise line between an unreviewable threshold rejection and a reviewable determination to conclude that the decision here was a "determination regarding an award" under subsection (b)(4).

Consistent with the plain terms and structure of the statute and our decision in *Li*, the Tax Court had jurisdiction over Lissack's appeal.

### B. The challenged regulations are consistent with the tax whistleblower statute.

Lissack challenges three provisions of the Whistleblower Definitions Rule. As a general matter, we review the decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). The Tax Court treated the relevant portion of the statute as ambiguous and upheld the IRS interpretation as reasonable under *Chevron*. On appeal, both parties likewise argue within the *Chevron* framework. The IRS defends the Tax Court's conclusion that the Whistleblower Definitions Rule reasonably construes ambiguous statutory text. And Lissack objects that subsection 7623(b) unambiguously supports his competing construction. We review the Tax Court's legal rulings *de novo*. *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014). At the first step of *Chevron*, "we must . . . decide 'whether Congress has directly spoken to the precise question at issue.'" *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 891 F.3d 1041, 1047 (D.C. Cir. 2018) (quoting *Chevron*, 467 U.S. at 842). If we can discern it from the statute, we "must give effect to the

unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. If the statute is "silent or ambiguous with respect to the specific issue," we do not simply impose our own interpretation, "as would be necessary in the absence of an administrative interpretation," *id*., but move to the second step and "determine whether [the IRS's] interpretation is 'based on a permissible construction of the statute.'" *Clean Air Project*, 891 F.3d at 1047 (quoting *Chevron*, 467 U.S. at 843). We hold that the Whistleblower Definitions Rule reasonably interprets the statute's mandatory-award provision.

**1.**

Lissack argues that, under the plain language of the statute, he is entitled to a whistleblower award because the IRS would not have opened an examination into the condominium group's tax problems but for his submission. He challenges the regulatory provisions that control the IRS's determinations whether any proceeds were "collected as a result of" an IRS "administrative action" to which a whistleblower "substantially contributed." I.R.C. § 7623(b)(1). First, he challenges the provision of the Rule defining an "administrative action" that the IRS treats as "based on" a whistleblower submission under subsection (b)(1) to be "all or a portion of" a proceeding that may yield collected proceeds. 26 C.F.R. § 301.7623-2(a)(2). Second, he challenges an example (Example Two) that illustrates how, when the IRS discovers "additional facts that are unrelated to the activities described in the information provided by the whistleblower" and accordingly expands the scope of the examination, the investigation into those unrelated facts "are not actions with which the IRS proceeds based on the information provided by the whistleblower." 26 C.F.R. § 301.7623-2(b)(2) (Example 2).

Lissack's challenge requires us to answer two questions: First, whether the tax whistleblower statute requires the IRS to consider the "whole action"—in this case, all its examination activity—regarding one taxpayer as a single administrative action, and, second, whether the statute mandates an award whenever the whistleblower's information was the but-for cause to initiate an investigation of the taxpayer, even if the ultimate basis for the IRS's collection of proceeds found no factual support in the information the whistleblower provided.

We hold that the IRS definition of "administrative action" and Example Two are permissible interpretations of Section 7623. The tax whistleblower statute does not conclusively answer whether examinations into distinct tax issues not identified in a whistleblower's submission can be separate administrative actions. Nor does the statute unambiguously require that a whistleblower receive a mandatory award where the whistleblower's information was unrelated to the tax issues on which the IRS ultimately collected proceeds, even if that information was the but-for cause of an examination.

"We begin, as in any case of statutory interpretation, with the language of the statute." *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283 (2011). Subsection (b) of Section 7623, the mandatory-award provision, requires the Secretary to pay awards of 15 to 30 percent "of the proceeds collected as a result of the action (including any related actions)" whenever the Secretary "proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual." I.R.C. § 7623(b)(1). The cross reference to subsection (a) tells us that the "administrative action[s]" subject to mandatory whistleblower awards are actions for "detecting underpayments of tax" or "detecting and bringing to trial"

persons who violate or "conniv[e]" to violate internal revenue laws. *Id.* § 7623(a).

The statute does not further define "administrative action," so we look to the ordinary meaning of the phrase. *See CSX Transp., Inc.*, 562 U.S. at 284. "Administrative" describes "administration," meaning "[t]he executive branch of a government." WEBSTER'S II DICTIONARY 11 (3d ed. 2005). "Action" is "[a]n act or deed." *Id.* at 9; *see also Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[t]he process of doing something; conduct or behavior"). The phrase "administrative action," then, generally refers to acts of executive agencies.

Two other phrases from subsection (b)(1) help inform the scope of "administrative action" as the term is used here: "based on" and "substantially contributed." I.R.C. § 7623(b)(1). The IRS must pay an award only where it "proceeds based on" information that a whistleblower provides. *Id.* The statute does not define or explain what level of causation "based on" implies. Lissack argues it is necessarily met by but-for causation, requiring an award whenever the whistleblower's information appears within the causal chain leading the IRS to recover proceeds from a delinquent taxpayer. But the Whistleblower Definitions Rule defines when the Service "proceeds based on" whistleblower information as limited to cases in which "the information provided substantially contributes to an action against a person identified by the whistleblower." 26 C.F.R. § 301.7623-2(b)(1).

The IRS's reading of "proceeds based on" gains support from the statutory requirement that the whistleblower information have "substantially contributed" to a recovery. I.R.C. § 7623(b)(1). The statute says that the size of a

mandatory award within the stated range "shall depend upon the extent to which the individual substantially contributed to such action." *Id*. In pegging the award amount to the degree of substantiality of the whistleblower's assistance, the statute plainly means that all such awards depend on the whistleblower having contributed in some substantial degree to the Service's ability to proceed.

Lissack also rests on what he claims is relevant past practice of the IRS of treating an examination as a single administrative action. He says that when Congress amended the statute in 2006 to add mandatory whistleblower awards, it intended to incorporate the IRS's then-existing practice. Pointing to a committee staff summary of the 2006 amendments, Lissack contends it shows the IRS had no prior practice of identifying distinct administrative actions within a larger examination. Lissack's past-practice argument misses the mark. Before 2006, whistleblower awards were entirely at the discretion of the IRS, § 1209, 110 Stat. at 1473, so the statute did not specify how the Service might parse the roles of whistleblower submissions in its proceedings. We are unpersuaded that the Service's practice under the discretionary regime informs wholly new requirements under mandatory-award provisions of the 2006 Act.

In sum, Lissack "fails to show that the language of [Section 7623 of the Internal Revenue Code] unambiguously compels" his interpretation. *Otsuka Pharm. Co. v. Price*, 869 F.3d 987, 993 (D.C. Cir. 2017). The statute does not clearly direct the IRS to treat an entire examination as a single administrative action and to give an award to a whistleblower whose submission was a but-for cause of the examination.

We turn, therefore, to the second step of our *Chevron* analysis, deferring to the agency's interpretation "as long as it

is consistent with the statutory terms and is reasonable." *Id.* We hold that the Whistleblower Definitions Rule reasonably interprets the tax whistleblower statute. The ordinary meaning of "administrative action"—activities by executive agencies—may in this context sensibly be limited to action on the discrete tax issue or issues the whistleblower's information identifies. As already discussed, Congress required awards only where the IRS "proceeds based on" the whistleblower information and makes a recovery, with precise award amounts within the stated range depending on the degree to which the information "substantially contributed to" that recovery. The Whistleblower Definitions Rule validly interprets the statute to require awards only to whistleblowers who identify underpayments and provide information that advances to some substantial degree the IRS's recovery of those underpayments.

Lissack defends his but-for approach, arguing that he provided "valuable information" by informing the IRS that the development group taxpayers "are the type of taxpayers to misstate their tax liability generally, and debt in particular." Appellant's Br. 10. But there is "no statutory requirement that [the IRS] follow such an approach." *Clean Air Project*, 891 F.3d at 1051. Rather, there is ample reason to doubt that Congress meant to entitle whistleblowers to substantial awards just for raising plausible but meritless concerns about taxpayers who, on investigation by the IRS, turn out to be noncompliant in some other, unrelated way. Such a regime likely would encourage whistleblowers to flyspeck major taxpayers, identifying any plausible underpayment in the hope of triggering an examination yielding some other, major adjustment. The IRS approach, in contrast, calibrates mandatory awards to the fruits of the particular IRS actions that the whistleblower's information substantially assists.

Congress directed the IRS to reward whistleblowers based on the extent of their substantial contributions to recovery of unpaid taxes. The challenged provisions of the Whistleblower Definitions Rule measure contributions according to the degree to which the whistleblower's specific facts aid the relevant portion of an examination. Those provisions reasonably interpret the tax whistleblower statute.

**2.**

Lissack also argues that the IRS's definition of "related action," 26 C.F.R. § 301.7623-2(c), impermissibly narrows the statute's reach. Even if the "administrative action" definition and Example Two are valid and the bad-debt investigation was a separate action not based on his submission, Lissack contends it should count as a "related action," entitling him to a share of its proceeds. He challenges the "related action" definition under *Chevron* step one and makes no step two argument on this point.

Under the mandatory-award provision, the IRS must pay whistleblowers awards amounting to 15 to 30 percent "of the proceeds collected as a result of the action (including any *related actions*)." I.R.C. § 7623(b)(1) (emphasis added). Section 7623 does not elaborate on the meaning of "related actions." The challenged rule defines a "related action" as "an action against a person other than the person(s) identified in the information provided and subject to the original action(s)" where three conditions are met: (1) the action involves "substantially the same" facts as the whistleblower submission, (2) "[t]he IRS proceeds with the action against the other person based on the specific facts described and documented" in the submission, and (3) "the IRS can identify the unidentified person using the information provided (without first having to use the information provided to identify any other person or

having to independently obtain additional information)." 26 C.F.R. § 301.7623-2(c). The Rule's "related action" definition thus unites actions that involve "substantially the same" facts so as to reward whistleblowers whose submissions enable the IRS, without further investigation, to identify additional noncompliant taxpayers. That approach is consistent with the statute, which directs the IRS to grant awards according to the substantiality of the whistleblower's contribution. *See* I.R.C. § 7623(b)(1).

In Lissack's view, the plain meaning of the statutory reference to "related actions" also includes actions that are against the same taxpayer but involve taxpayer activities different from those identified in the whistleblower's submission. Lissack invokes ordinary meanings of "related" as "belonging to the same family, group, or type; connected," Appellant's Br. 35 (quoting an unidentified edition of the Oxford English Dictionary), and he asserts that the IRS investigation of the condominium development group's bad debt was necessarily "related" to the membership-deposits problem his submission identified. But even if we accept his definition of "related," that definition does not compel Lissack's reading of the statute. An action could be "connected" to the original action if it involved the same facts, as the IRS contends, or if it involved the same taxpayer, as Lissack contends. Lissack's dictionary definition of "related" does not foreclose the IRS's interpretation.

Lissack further argues that Congress would have chosen a narrower term than "related" had it intended the IRS's reading. Because "Congress never limited related actions to actions relating to another taxpayer, which it easily could have," Lissack says, the IRS should not be able to include that limitation in its definition. *Id.* at 36. But the mere possibility

that the statute could have been worded even more clearly does not defeat the IRS's reading.

Lissack also seeks support in the treatment of "related actions" under the False Claims Act, but that analogy is unhelpful. "Actions are 'related'" under the False Claims Act "if they assert the 'same material elements of fraud' as an earlier suit, even if the allegations 'incorporate somewhat different details.'" *United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 116 (D.C. Cir. 2015) (quoting *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003)). The Tax Court held the False Claims Act definition "has no application to a tax case such as this," and that its definition was in any event unmet here, where "the IRS did not just pursue 'a different legal theory' for the membership deposits issue," but proceeded on "an entirely unrelated issue—the bad debt deduction—that was governed by different law and different facts." *Lissack*, 157 T.C. at 77. We agree that, even if the False Claims Act standard applied, Lissack's submission about the membership-deposits issue did not relate to the bad-debt issue in a way that would meet that standard.

Lissack has not established that the statute forecloses the Rule defining "related action," and he does not contend that the definition is unreasonable or otherwise contrary to the APA.

## C. The Tax Court had no obligation to conduct a trial *de novo*.

In challenging the Tax Court's affirmance of the Whistleblower Office determination denying him an award under I.R.C. § 7623(b)(1), Lissack argues that summary judgment is foreclosed here by a genuine factual dispute over whether the revenue agent relied on Lissack's submission to identify the bad-debt issue. He contends that the Tax Court

erroneously accepted an administrative record that was incomplete because it did not include the entire examination file.

The parties agree that we review legal rulings of the Tax Court *de novo*, including rulings on motions for summary judgment, *Byers*, 740 F.3d at 675, but they dispute the correct standard of review in the Tax Court. Lissack argues that the Tax Court should review determinations of the Whistleblower Office "as it reviews cases under the Tax Court's original deficiency jurisdiction," Appellant's Br. 40—by "trial *de novo*," *Ax v. Comm'r*, 146 T.C. 153, 161 (2016)—instead of confining its review to the administrative record. Lissack critiques the Tax Court's decision in *Kasper v. Commissioner*, 150 T.C. 8 (2018), which held that the Tax Court reviews whistleblower award decisions under APA section 706(2)(A) based on the administrative record. *Id.* at 14-15, 20-22. Two *amici* join Lissack to argue that *de novo* factfinding by the Tax Court would better serve Congress's intent to establish meaningful review of Whistleblower Office decisions.

The IRS defends the standard of review established in *Kasper*. It also argues that we have no occasion here to reach the issue "because the denial of Lissack's claim was correct under any standard of review." IRS Br. 45. We agree that the Tax Court's decision is correct under any standard of review, so we have no occasion to pass on the merits of *Kasper*.

Lissack's appeal is comprised of legal questions, including (1) the validity of the Whistleblower Definitions Rule, (2) whether material disputes of fact preclude summary judgment, and (3) the adequacy of the record before the Tax Court.

*First*, in resolving Lissack's legal challenges to the IRS's interpretations of relevant statutory terms, the Tax Court and this court have each conducted *de novo* review to identify

statutory ambiguity and analyze the Whistleblower Definitions Rule under *Chevron*. *See supra* Discussion Parts A and B.

*Second*, the propriety of summary judgment is likewise a legal question considered *de novo*. Lissack asserts that the Tax Court should not have granted summary judgment because key record facts are disputed, but he fails to show that to be the case. A factual dispute is "material," precluding summary judgment, only "if its resolution 'might affect the outcome of the suit.'" *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1285 (D.C. Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The IRS *agrees* with Lissack's factual assertion that it would not have opened any examination of the condominium group if not for Lissack's Form 211. The problem for Lissack is that the but-for causal link he emphasizes is legally insufficient to support his claim.

We, like the Tax Court, recognize that the IRS would have made no tax adjustment on the bad debt if it had not opened an examination on Lissack's submission regarding the taxpayer's treatment of membership deposits. Cognizant of that fact, our *de novo* review of the summary judgment yields the same conclusion as the Tax Court's: Under the statute and Rule, the adjustment was not "a result of" the "administrative action" regarding membership deposits that the IRS undertook "based on" Lissack's information, or to which his information "substantially contributed." I.R.C. § 7623(b)(1). As we have already explained, *see supra* Discussion Part B, administrative actions on the membership-deposits issue and the bad-debt issue are distinct and unrelated as a matter of law under the valid Whistleblower Definitions Rule. 26 C.F.R. § 301.7623-2(a)(2), (b)(1), (c)(1).

Lissack insists that discovery would have established that the revenue agent relied on his submission, but the facts he says

he sought to uncover would establish nothing more than but-for causation. In other words, he argues he needs discovery to support an already-accepted factual premise: The examination triggered by Lissack's whistleblower submission led to the IRS's own investigation into the bad debt. He claims he should have been afforded discovery regarding "how the Revenue Agent discovered the other issues." Appellant's Br. 49. In Lissack's view, such information is material "to determine if the issues are 'related' and how helpful the whistleblower's information was to the Revenue Agent." *Id.* Had the administrative record included the "entire taxpayer audit file," Lissack contends, he could have shown that the revenue agent's discovery of the intercompany bad-debt issue relied on the membership-deposits information Lissack submitted. *Id.* at 54. Again, for the reasons already discussed, *see supra* Discussion Part B, none of those additional facts could support a judgment in his favor.

*Third*, Lissack argues that the record before the Tax Court was inadequate. *Amici* agree. They contend that the statute contemplates trial *de novo* in the Tax Court. They argue the text, context, and drafting history of the statute so require. Lissack and *amici* point out that confining judicial review to the administrative record is anomalous here because the Whistleblower Office makes the records of its award determinations without adjudicatory procedures, public comment, or other opportunity for stakeholders—including the whistleblower—to be heard. *Amicus* Whistleblower 11099-13W also contends that judicial deference to the Whistleblower Office is inappropriate because the Office's determinations involve no "technically complex issue within an agency's unique expertise," only the kind of matter "that courts are called upon to resolve every day." Amicus Whistleblower 11099-13W Br. 10-11.

We need not here decide whether the Tax Court must conduct a trial *de novo* on an appeal of a Whistleblower Office determination, nor what standard of review applies to a challenge to the scope of the record the IRS submitted to the Tax Court, because Lissack made no request before the Tax Court to expand the administrative record or create a new one. If Lissack believed the record was inadequate, he should have sought to compel production of documents to supplement the record, but he concedes he failed to do so. Reply Br. 25-27.

Lissack counters that he should not have had to do so, because he moved only for *partial* summary judgment on his legal challenge to the Whistleblower Definitions Rule, anticipating that "resolution of that issue would dictate whether [he] needed to get into a long discovery fight." *Id.* at 25. But, as the Tax Court explained when rejecting his motion for reconsideration, even after that court granted the IRS's cross-motion for summary judgment Lissack did not seek supplementation of the administrative record, nor did he "identif[y] any gaps in the administrative record" (nor, for that matter, did he point to any information in his own whistleblower submission) that "was relevant to the bad debt deduction issue." J.A. 369. In view of Lissack's failure to preserve the point, we affirm the Tax Court's decision to base its review on the portions of the administrative record the IRS compiled and submitted as relevant.

As the Tax Court acknowledged, some whistleblower claims may require discovery and judicial factfinding. But even had he not forfeited the point, Lissack has not shown that he was deprived of any material evidence. Again, on Lissack's own account, the factual point he sought to bolster was but-for causation. But "[h]ow the revenue agent discovered" the intercompany bad-debt issue, Appellant's Br. 49, was both undisputed in his favor, and immaterial. Lissack does not

assert that broader access to the IRS files would reveal that his own submission to the IRS contained information on the condominium group's treatment of intercompany bad debt. And, under the statute and Rule, that bad-debt issue remains unrelated to the membership-deposits issue he identified. We see no error in the Tax Court's rulings on Lissack's record-inadequacy claims.

In sum, the Tax Court correctly concluded that "the record provides more than enough evidence to confirm that petitioner is not eligible for a mandatory award," and ruled in favor of the IRS as a matter of law. *Lissack*, 157 T.C. at 78. The Tax Court credited information in the administrative record showing that "none of the adjustments had anything to do with the membership deposits issue," including the revenue agent's report that Lissack "had not 'provided *any* information for the adjusted issues,'" and the Whistleblower Office analyst's confirmation that Lissack "had made no allegations and submitted no facts related to [the development group's] intercompany debt (or any other adjustment)." *Id.* at 66. Lissack failed to challenge before the Tax Court its reliance on the administrative record or object to the scope of that record, and even now he does not identify information he would have sought that could have created a material factual dispute precluding summary judgment.

\* \* \*

For the foregoing reasons, we affirm the judgment of the Tax Court.

*So ordered.*