# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed January 10, 2025

No. 21-1268

MICHAEL LISSACK,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

On Remand from the Supreme Court of the United States

———

*Erica L. Brady-Gitlin* argued the cause for appellant. With her on the briefs were *Gregory S. Lynam* and *Scott A. Knott*.

*Brian C. Wille* and *Usman Mohammad* were on the brief for *amicus curiae* Whistleblower 1109-13W in support of appellant.

*Dean Zerbe* and *Stephen M. Kohn* were on the brief for *amicus curiae* National Whistleblower Center in support of appellant.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Bruce R. Ellisen*, Attorney.

2

Before: PILLARD and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Section 7623 of the Internal Revenue Code authorizes the IRS to pay awards to whistleblowers who identify underpayment of taxes or violations of internal revenue law. The provision at issue here, subsection 7623(b)(1), mandates awards for whistleblowers who provide the IRS with information that makes a substantial contribution to a tax adjustment. It calls for awards of between 15 and 30 percent of proceeds the IRS collects "as a result of" an "administrative or judicial action" that is "based on information" provided by a whistleblower. I.R.C. § 7623(b)(1). The IRS's "determination of the amount of such award" depends on the extent to which a whistleblower "substantially contributed" to the administrative action. *Id.* A Treasury regulation implementing the statute allows the IRS to treat investigations into unrelated tax issues of the same taxpayers as separate "administrative action[s]." 26 C.F.R. §§ 301.7623-2(a)(2), (b)(2) (Example 2). Appellant Michael Lissack claimed that the IRS owed him a whistleblower award under subsection 7623(b)(1), and he argued that the Treasury regulation on which the IRS relied to decide otherwise contravenes the text of the statute.

Lissack submitted information to the IRS that he thought showed that a condominium development group evaded taxes through its treatment of golf-club-membership deposits. The IRS deemed the information Lissack submitted sufficiently specific and credible to warrant opening an examination, but later concluded that the membership deposits were correctly reported. Through its own further investigation, however, the IRS discovered an unrelated problem: The same development

group had taken an impermissible deduction on intercompany bad debt. The IRS eventually ordered the development group to pay a large adjustment relating to its treatment of that debt, but it denied Lissack's claim for a percentage of those proceeds. When Lissack sought review of that decision, the Tax Court granted summary judgment to the IRS. *Lissack v. Comm'r*, 157 T.C. 63, 78 (2021). Lissack appealed to us, and the IRS primarily argued that the Tax Court lacked jurisdiction to review its award denial, even as it defended its rule and its application to Lissack's case.

In an opinion issued in 2023, we held that the Tax Court had jurisdiction, the Whistleblower Definitions Rule was a reasonable interpretation of the statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and the Tax Court correctly decided summary judgment on a sufficient administrative record that Lissack never sought to supplement. *Lissack v. Comm'r*, 68 F.4th 1312 (D.C. Cir. 2023).

Lissack sought Supreme Court review. Petition for Writ of Certiorari, *Lissack v. Comm'r*, 144 S. Ct. 2707 (2024) (No. 23-413). In the interim, the Court decided *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), in which it held that "*Chevron* is overruled." *Id.* at 2273. Courts must now "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* The Court then granted Lissack's petition, vacated our judgment, and remanded the case for further consideration in light of *Loper Bright*. *Lissack v. Comm'r*, 144 S. Ct. 2707 (2024). We now reconsider Lissack's appeal in accordance with that mandate. Reviewing the challenged rules without deference, we conclude that the Service correctly interpreted and applied the Whistleblower Definitions Rule, so we again affirm the decision of the Tax Court.

# BACKGROUND

## A.

The Internal Revenue Service (IRS or Service) has authority under Internal Revenue Code Section 7623 to pay awards to whistleblowers who help the Service identify and collect underpaid taxes. Congress first granted that authority to the Secretary of the Treasury in 1867. Act of March 2, 1867, Pub. L. No. 39-169, § 7, 14 Stat. 471, 473. Until 2006, any such whistleblower award was at the discretion of the IRS. *See* Taxpayer Bill of Rights 2, Pub. L. 104-168, § 1209, 110 Stat. 1452, 1473 (1996); *Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183, 186 (2011)*.* Under the discretionary regime, the Service was not bound by the statute or regulations to pay any whistleblower and, when it chose to do so, the amount was within its sole discretion; there was no provision for judicial review.

In 2006, Congress amended the tax whistleblower statute. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, § 406, 120 Stat. 2922, 2958-60 (2006 Act). Even as it retained in subsection (a) the IRS's longstanding authority to make discretionary awards to people who help in "detecting underpayments of tax" or "detecting and bringing to trial and punishment" persons who violate internal revenue laws, I.R.C. § 7623(a), the amendment added subsection (b) to make some whistleblower awards mandatory. *See* Tax Relief and Health Care Act § 406; I.R.C. § 7623(b). The 2006 Act also created the IRS Whistleblower Office, empowered it to determine award amounts, and authorized appeal to the Tax Court of any "determination" regarding a mandatory Whistleblower Office award. § 406, 120 Stat. at 2958-60; I.R.C. § 7623(b)(4). This appeal turns on the meaning of the mandatory-award provision

(subsection (b)(1)) and the judicial-review provision (subsection (b)(4)).

Under the mandatory-award provision, a whistleblower "shall . . . receive" an award if the IRS "proceeds with any administrative or judicial action described in subsection (a)"—*i.e.*, detecting underpayments or detecting and bringing evaders to judgment—"based on information brought to the Secretary's attention by" the whistleblower. I.R.C. § 7623(b)(1). (For convenience in this appeal, which involves only administrative action against a taxpayer, we use the shorthand "administrative action" rather than "administrative . . . action," and "proceeds based on," rather than "proceeds . . . based on," when quoting subsection 7623(b)(1).) A mandatory award under subsection (b)(1) must be 15 to 30 percent "of the proceeds collected as a result of the action (including any related actions)," or due to a settlement. *Id.* Within that range, the amount of a mandatory award "shall depend upon the extent to which the individual substantially contributed to such action." *Id.*

The judicial-review provision states: "Any determination regarding an award under paragraph [(b)](1) . . . may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." *Id.* § 7623(b)(4). We recently held that a reviewable "determination regarding an award" within the meaning of that paragraph, *id.*, does not include the Whistleblower Office's "threshold rejection" of a whistleblower's submission "for vague and speculative information" in advance of any referral to the IRS for examination, *Li v. Comm'r*, 22 F.4th 1014, 1017 (D.C. Cir. 2022). In this appeal, the IRS argues that the Tax Court lacked jurisdiction because, in its view, the logic of *Li* means the Whistleblower Office's final determination letter denying Lissack's claim was not a reviewable determination under subsection (b)(4).

6

**B.**

Lissack challenges three parts of a Treasury Department regulation we refer to as the Whistleblower Definitions Rule: (1) the definition of "administrative action," (2) one of the examples illustrating what counts as the Service "proceed[ing]" with an administrative action "based on" whistleblower information, and (3) the definition of "related action." 26 C.F.R. §§ 301.7623-2(a)(2), (b)(2) (Example 2), (c)(1). The IRS is a component of the Treasury Department; for ease of reference in this opinion we attribute the rule to the IRS.

First, as to "administrative action," recall that an award is mandatory under the statute if the IRS "proceeds with any administrative or judicial action" that is "based on" the whistleblower's information. I.R.C. § 7623(b)(1). The Rule defines "administrative action" to mean "all or *a portion of* an Internal Revenue Service (IRS) civil or criminal proceeding against any person that may result in collected proceeds, . . . including, for example, an examination, a collection proceeding, a status determination proceeding, or a criminal investigation." 26 C.F.R. § 301.7623-2(a)(2) (emphasis added). That definition allows the IRS to divide examinations into discrete portions or segments raising distinct tax issues, and to treat each as a separate administrative action for purposes of attributing an action to whistleblower information.

Next, in defining how the Service "proceeds" with an action "based on" whistleblower information, I.R.C. § 7623(b)(1), the Rule distinguishes IRS administrative actions subject to the mandatory-award provision from those not triggering such an award: The IRS "proceeds based on information provided by a whistleblower when the information

provided substantially contributes to an action against a person identified by the whistleblower." 26 C.F.R. § 301.7623-2(b)(1). For example, when the IRS "initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided," it "proceeds based on" the whistleblower submission. *Id.*

The regulatory definitions of "administrative action" and "proceeds based on" work together. They help explain that the IRS may consider investigations into tax issues unrelated to the whistleblower submission as separate administrative actions. The upshot is that a whistleblower whose information may have "substantially contributed" to a fruitless action against a person is not entitled to share proceeds from a distinct action against that same person that did not draw on the whistleblower's information. As the agency explained in the preamble to the final regulations, "the tax administration process is a long and multi-faceted one that may extend over the course of many years and may involve multiple substantial contributions from different sources." Awards for Information Relating to Detecting Underpayments of Tax or Violations of the Internal Revenue Laws, 79 Fed. Reg. 47,246, 47,262/3 (Aug. 12, 2014) (codified at 26 C.F.R. pt. 301). In cases involving multiple tax issues, treating each distinct tax issue as a separate "administrative action" enables the IRS to calibrate whether and to what extent a recovery was "based on" a whistleblower's tip "by reference to just the discrete and relevant portion of the examination to which the information provided relates." *Id*. at 47,250/3.

The Whistleblower Definitions Rule includes some examples illustrating rule applications. The challenged Example Two to the definition of "proceeds based on"

describes cases in which the IRS's investigation of a whistleblower submission uncovers "additional facts that are unrelated to the activities described in the information provided by the whistleblower," leading the Service to examine issues other than those the whistleblower identified. 26 C.F.R. § 301.7623-2(b)(2) (Example 2). In those circumstances, the Rule explains, "[t]he portions of the IRS's examination . . . relating to the additional facts obtained" through the Service's independent investigative measures "are not actions with which the IRS proceeds *based on* the information provided by the whistleblower because the information provided did not substantially contribute to the action." *Id*. (emphasis added).

The third target of Lissack's challenge is the Whistleblower Definitions Rule's interpretation of the statutory term "related actions." I.R.C. § 7623(b)(1). Recall that the mandatory-award provision of the statute directs that a whistleblower shall receive a percentage of "the proceeds collected as a result of the action (including *any related actions*)." *Id*. (emphasis added). Under the Whistleblower Definitions Rule, "the term related action means an action against a person other than the person(s) identified in the information provided and subject to the original action(s)," so long as the action against the additional person has a regulatorily specified nexus to the original action. 26 C.F.R. § 301.7623-2(c)(1). That definition does not treat the IRS's action on a distinct issue against the same person as "related" to its action on the whistleblower's information, even if the IRS only discovered the distinct issue because the whistleblower led it to audit that person.

## C.

In 2009, Michael Lissack filed with the IRS Whistleblower Office an Application for Award for Original Information (Form 211). He submitted almost 200 pages of material identifying a condominium development group and showing why he thought it had underpaid its taxes on golf club memberships. Lissack contended that, after making membership deposits nonrefundable in 2008, the development group should have reported the retained deposits to the IRS as gross income.

Lissack's information led to an IRS examination into the development group. A senior tax analyst in the Whistleblower Office determined that Lissack's submission identified a tax issue and referred it to the IRS Large Business and International Division. A revenue agent in that division opened an investigation based on Lissack's information and sent progress reports to the Whistleblower Office.

In a 2011 report, the revenue agent explained that, before receiving Lissack's submission, the IRS had not planned to investigate the development group, but the information Lissack provided "was sufficient to warrant beginning of examination." *Lissack v. Comm'r*, 157 T.C. 63, 66 (2021). In other words, the revenue agent acknowledged that Lissack's submission was the reason the IRS opened an examination. The following month, the revenue agent reported that he had fully researched the membership-deposit tax issue and concluded that the development group reported the deposits correctly.

Even as he reported that he was closing the book on the membership-deposit issue Lissack had raised, the revenue agent noted that his investigation had uncovered a different tax issue that was "unrelated to the subject of the whistleblower claims." *Id*. He saw indications that the development group

had taken a $60 million deduction for "bad debt," meaning a business debt that the company characterized as worthless and deducted from gross income. *Id.*; *Topic No. 453, Bad Debt Deduction*, IRS, https://perma.cc/VN67-LGGF (last updated Apr. 6, 2023). The revenue agent accordingly expanded the audit based on the facts he had discovered.

In 2013, the revenue agent finished the examination and ordered several tax adjustments, the largest of which was for the $60 million bad-debt deduction. The agent reported that Lissack did not "provide[] *any* information for the adjusted issues." *Lissack*, 157 T.C. at 66; *see* J.A. 59 (Declaration of Whistleblower Office Analyst).

In 2017, the Whistleblower Office denied Lissack's claim for an award. In the final determination letter, the Whistleblower Office informed Lissack that his claim was denied "because the IRS took no action on the issues you raised." J.A. 16. "After receipt of your information," the letter explained, "the IRS initiated an examination" of the development group, "and the IRS reviewed the information you provided as part of that examination. However, that review did not result in the assessment of additional tax, penalties, interest or additional amounts with respect to the issues you raised." J.A. 16. Finally, the letter informed Lissack that the IRS did assess additional taxes against the taxpayer, "but the information you provided was not relevant to those issues." J.A. 16.

Lissack petitioned the Tax Court to review the Whistleblower Office's adverse decision on his application for an award. The IRS moved for summary judgment based on the relevant portion of the administrative record and a declaration from the Whistleblower Office analyst assigned to Lissack's claim. Lissack opposed the motion, arguing that the

administrative record was incomplete because the IRS had redacted too many documents in the administrative file. Lissack also cross moved for partial summary judgment, challenging certain provisions of the Whistleblower Definitions Rule as contrary to the statute and contending that the Service misapplied its rule.

In the decision now under review, the Tax Court granted summary judgment in full in favor of the IRS. In a carefully reasoned opinion, the Tax Court held that, although the IRS "did initiate an action" based on the information Lissack provided regarding membership deposits, he "is not eligible for a whistleblower award" because "the IRS did not collect any proceeds 'as a result of th[at] action'" or any "related action." *Lissack*, 157 T.C. at 69-70 (alteration in original) (quoting I.R.C. § 7623(b)(1)), 72, 76. The Tax Court held that the undisputed facts showed Lissack had "supplied no information to the IRS about [the development group's] intercompany bad debt deduction," so he was not entitled to a percentage of the proceeds collected in that action. *Id.* at 71.

In granting summary judgment, the Tax Court had "no difficulty concluding that the regulation passes muster" under *Chevron*. *Id.* at 74. The court noted that the statute "does not describe or define an 'administrative or judicial action'" so, as relevant here, "leaves ample scope to the Secretary to define the term" to refer to "'all or a portion of' an IRS civil or criminal proceeding." *Id.* at 72 (quoting 26 C.F.R. § 301.7623-2(a)(2)). In other words, it saw the statutory language as ambiguous regarding whether an expanded portion of an examination is a separate administrative action as to which the whistleblower's contribution requires no award. Given that ambiguity, the Tax Court held, the Whistleblower Definitions Rule reasonably interprets the statutory terms "administrative action" and "proceeds based on." *Id.* at 75-76.

12

The Tax Court also rejected Lissack's remaining two arguments. First, the court held that the investigation into the bad debt was not a "related action," under the IRS's definition of that term, to the action on the membership-deposit issue Lissack identified. *Id.* at 76 (citing 26 C.F.R. § 301.7623-2(c)(1)). It was neither "against a person other than the person(s)" Lissack's information identified, nor were "[t]he facts relating to" the bad-debt action "substantially the same" as the membership-deposit facts Lissack provided. *Id.* (alteration in original) (quoting 26 C.F.R. § 301.7623-2(c)(1)). Second, the court held that the administrative record sufficed, providing "more than enough evidence to confirm that petitioner is not eligible for a mandatory award." *Id.* at 78. The Tax Court noted that this is a "record rule" case, in which summary judgment ordinarily is decided based on an administrative record that "comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by one or more common law or statutory privileges." *Id.* at 77 (first quoting *Van Bemmelen v. Comm'r*, 155 T.C. 64, 79 (2020); and then quoting 26 C.F.R. § 301.7623-3(e)(1)). Although whistleblowers may file motions to compel production of documents and to supplement the record, the Tax Court noted, Lissack "filed no motion of either sort." *Id.* at 78.

Lissack moved to vacate or revise the summary judgment decision, and for reconsideration, but the Tax Court denied the motion. On appeal, we held that the Tax Court had jurisdiction; the Whistleblower Definitions Rule was a reasonable interpretation of the statute under *Chevron*; and the Tax Court correctly decided summary judgment on a sufficient administrative record that Lissack never sought to supplement. *Lissack*, 68 F.4th at 1320.

This case now returns to us on remand from the Supreme Court.  Because *Chevron* is overruled, we consider Lissack's claims in light of the mandate to "exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273.

## DISCUSSION

The IRS argues that the Tax Court lacked jurisdiction over Lissack's appeal, and in any event reached the correct result. Lissack counters that the Tax Court correctly exercised jurisdiction but erred in granting summary judgment to the IRS because the Whistleblower Definitions Rule conflicts with the statute, a genuine factual dispute remains over whether the revenue agent relied on Lissack's submission, and the administrative record was incomplete without the entire examination file.  We adhere to our prior holding that the Tax Court had jurisdiction.  Without any reliance on *Chevron* deference, we are persuaded that the Whistleblower Definitions Rule correctly interprets the statute.  We reinstate as unaffected by *Loper Bright* our judgment upholding the decision of the Tax Court.

### A.    The Tax Court had jurisdiction.

 "Any determination regarding an award under" subsection 7623(b)(1), (2), or (3), may be appealed to the Tax Court, which "shall have jurisdiction with respect to such matter." I.R.C. § 7623(b)(4).   Our jurisdiction over the merits of Lissack's petition, in turn, rests on the Tax Court having had jurisdiction.   *Li*, 22 F.4th at 1015.   We consider the jurisdictional question *de novo*, *Myers v. Comm'r*, 928 F.3d 1025, 1031 (D.C. Cir. 2019), and hold that the Tax Court had jurisdiction.

14

By its plain terms, subsection (b)(4)'s jurisdictional grant applies to "*[a]ny* determination regarding an award." I.R.C. § 7623(b)(4) (emphasis added). The Supreme Court has "repeatedly explained" that "the word 'any' has an expansive meaning." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022) (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 n.2 (2020)). "Similarly, the use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" *Id.* (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)). Congress thereby made generous provision for judicial review of Whistleblower Office award decisions.

The Service challenges the Tax Court's jurisdiction based on *Li v. Commissioner*, 22 F.4th 1014 (D.C. Cir. 2022). We held in *Li* that a threshold rejection of a Form 211 (*i.e.*, an application for a mandatory award) was not a reviewable "award determination under subsection (b)(1)-(3)." *Id*. at 1016; *see id.* at 1017-18. The Whistleblower Office had concluded that Li's Form 211 provided only "vague and speculative information it could not corroborate, even after examining supplemental material Li herself did not provide," so the Office did not even forward Li's submission to an IRS examiner. *Id.* at 1017. We referred to the text of subsection (b)(1) to reason that a "threshold rejection of a Form 211 by nature means the IRS is not *proceeding* with an action against the target taxpayer," and that "[t]herefore, there is no award determination, negative or otherwise, and no jurisdiction for the Tax Court." *Id.* We expressly reserved in *Li* the question of jurisdiction in cases in which the Whistleblower Office "wrongly denied a Form 211 application" but the IRS "nevertheless proceeded against a target taxpayer based on the provided information." *Id.* at 1017 n.2.

The Service contends that our logic in *Li*—looking to when the IRS "proceeds with" an action *per* subsection (b)(1) as describing a jurisdictional prerequisite—compels us to likewise treat as jurisdictional a second requirement of subsection (b)(1): that the IRS have "collected proceeds" based on the whistleblower's information. IRS Br. 25. Because, in the Service's view of the merits, the proceeds it collected were not recovered in the administrative action it took in response to Lissack's submission, it asserts the Tax Court lacked jurisdiction under subsection (b)(4) as interpreted in *Li*. In other words, as the IRS reads it, our decision in *Li* renders the jurisdictional grant coextensive with the merits of a whistleblower appeal. We disagree.

The fact that the IRS conducted an examination here suffices to distinguish Lissack's case from *Li*. Li never claimed that the IRS proceeded with any administrative or judicial action against the target taxpayer based on her submission. *Li, 22 F.4th at 1017 n.2.* Here, by contrast, there is no dispute that the Whistleblower Office referred Lissack's submission to the IRS, and an IRS revenue agent initiated an examination of the membership-deposits issue that Lissack identified. That referral and examination count as the IRS "proceed[ing] with" an "administrative action" that was "based on" the information Lissack brought to the Secretary's attention. I.R.C. § 7623(b)(1). And the "determination regarding an award" was the Whistleblower Office letter to Lissack informing him that the examination it initiated based on the information he provided did not result in the collection of any proceeds, so he was not entitled to an award.

These facts distinguish this case from *Li*, in which the IRS declined to take any action at all after receiving an application for a whistleblower award. Our holding in *Li* that the Tax Court lacked jurisdiction reflects the "general unsuitability for

judicial review of agency decisions to refuse enforcement." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (reiterating the principle that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"). Here, unlike in *Li*, the Service took action against the taxpayer Lissack identified, and the parties dispute whether Lissack is entitled to any of the money the IRS eventually collected from that taxpayer.

In sum, contrary to the Service's position, the statute does not require a whistleblower to establish a meritorious claim to an award before the Tax Court may exercise jurisdiction to review the IRS's determination on that claim. An "unusually high degree of clarity" is required to treat statutory requirements as jurisdictional, *Myers*, 928 F.3d at 1035, and, as just explained, subsection (b)(4) does not clearly support the Service's reading. To hold otherwise would impute to Congress an intent to authorize appeals by whistleblowers who believe their awards are too low, but bar appeals by whistleblowers like Lissack whose tips the IRS acts on, but who receive no award at all. To be sure, unless the IRS has made some adjustment, it is unclear what relief a whistleblower could be seeking. But the Whistleblower Office in this case made substantial adjustments. The merits dispute is whether Lissack's concededly nonfrivolous submission entitles him to share in the IRS's recovery from the taxpayer he identified. We need not delineate the precise line between an unreviewable threshold rejection and a reviewable determination to conclude that the decision here was a "determination regarding an award" under subsection (b)(4).

Consistent with the plain terms and structure of the statute and our decision in *Li*, the Tax Court had jurisdiction over Lissack's appeal.

**B.    The challenged regulations correctly interpret the tax whistleblower statute.**

Lissack challenges three provisions of the Whistleblower Definitions Rule.  As a general matter, we review the decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."  I.R.C. § 7482(a)(1).  We accordingly review the Tax Court's legal rulings *de novo*, *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014), and, on remand following *Loper Bright*, we do so without the deference we previously accorded the Secretary's interpretation of the whistleblower statute.  The Tax Court treated the relevant portion of the statute as ambiguous and upheld the IRS's interpretation as reasonable under *Chevron*.  On appeal, the IRS defended the Tax Court's conclusion that the Whistleblower Definitions Rule reasonably construed ambiguous statutory text, whereas Lissack objected that subsection 7623(b) unambiguously supported his competing construction.  Following the Supreme Court's decision to grant Lissack's petition, vacate our judgment, and remand the case for consideration in light of *Loper Bright*, no party sought an opportunity for supplemental briefing.

Having set aside *Chevron*'s framework and carefully reconsidered the statutory issues *de novo*, we now hold that the Whistleblower Definitions Rule is a proper exercise of the Treasury Department's authority under I.R.C. § 7623's mandatory-award provision.

**1.**

Lissack argues that, under the plain language of the statute, he is entitled to a whistleblower award because the IRS would not have opened an examination into the condominium development group's tax problems but for his submission.  He challenges the regulatory provisions that control the IRS's

determinations of whether any proceeds were "collected as a result of" an IRS "administrative action" to which a whistleblower "substantially contributed." I.R.C. § 7623(b)(1). First, he challenges the provision of the Rule defining an "administrative action" that the IRS treats as "based on" a whistleblower submission under subsection (b)(1) to be "all or a portion of" a proceeding that may yield collected proceeds. 26 C.F.R. § 301.7623-2(a)(2). Second, he challenges an example (Example Two) that illustrates how, when the IRS discovers "additional facts that are unrelated to the activities described in the information provided by the whistleblower" and accordingly expands the scope of the examination, the investigation into those unrelated facts "[is] not action[] with which the IRS proceeds based on the information provided by the whistleblower." 26 C.F.R. § 301.7623-2(b)(2) (Example 2).

Lissack's challenge therefore requires us to answer two questions: First, whether the tax whistleblower statute requires the IRS to consider the "whole action"—in this case, all its examination activity—regarding one taxpayer as a single administrative action, and, second, whether the statute mandates an award whenever the whistleblower's information was the but-for cause of the IRS's initiation of an investigation of the taxpayer, even if the IRS's ultimate collection of proceeds found no factual support in the information the whistleblower provided.

We hold that the Whistleblower Definitions Rule correctly implements the tax whistleblower statute. In this context, the ordinary meaning of "administrative action"—activities by executive agencies—makes the most sense if read to mean administrative action on the discrete tax issue or issues the whistleblower's information identifies. The statutory context also makes clear that an administrative action "proceeds based

on" a whistleblower's information when that information has substantially contributed to the IRS's administrative action and its ultimate recovery.

"We begin, as in any case of statutory interpretation, with the language of the statute." *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 283 (2011). Subsection (b) of Section 7623, the mandatory-award provision, requires the Treasury Secretary to pay awards of 15 to 30 percent "of the proceeds collected as a result of the action (including any related actions)" whenever the Secretary "proceeds with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by an individual." I.R.C. § 7623(b)(1). The cross reference to subsection (a) tells us that the "administrative action[s]" subject to mandatory whistleblower awards are actions for "detecting underpayments of tax" or "detecting and bringing to trial" persons who violate or "conniv[e]" to violate internal revenue laws. *Id.* § 7623(a).

The statute does not further define "administrative action," so we look to the ordinary meaning of the phrase. *See CSX Transp., Inc.*, 562 U.S. at 284. "Administrative" describes "administration," which in the context of regulatory activity refers to "[t]he executive branch of a government." WEBSTER'S II DICTIONARY 11 (3d ed. 2005). "Action" is "[a]n act or deed." *Id.* at 9; *see also Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[t]he process of doing something; conduct or behavior"). The phrase "administrative action," then, generally refers to acts of executive agencies.

Two other phrases from subsection (b)(1) help inform the scope of "administrative action" as the term is used here: "based on" and "substantially contributed." I.R.C. § 7623(b)(1). The IRS must pay an award only where it

"proceeds based on" information that a whistleblower provides. *Id.* The statute does not define or explain what level of causation "based on" implies. Lissack argues it is necessarily met by but-for causation, requiring an award whenever the whistleblower's information appears within the causal chain leading the IRS to recover proceeds from a delinquent taxpayer. But the Whistleblower Definitions Rule defines when the Service "proceeds based on" whistleblower information as limited to cases in which "the information provided substantially contributes to an action against a person identified by the whistleblower." 26 C.F.R. § 301.7623-2(b)(1).

The IRS's "proceeds based on" rule more accurately carries out the statutory requirement that the whistleblower information have "substantially contributed" to a recovery than does Lissack's but-for reading. I.R.C. § 7623(b)(1). The statute says that the size of a mandatory award within the stated range "shall depend upon the extent to which the individual substantially contributed to such action." *Id*. In pegging the award amount to the degree of substantiality of the whistleblower's assistance, the statute plainly means that all such awards depend on the whistleblower having contributed in some substantial degree to the Service's ability to proceed. But-for cause is not enough. The Whistleblower Definitions Rule therefore correctly interprets the statute to require awards only to whistleblowers who identify underpayments and provide information that advances to some substantial degree the IRS's recovery of those underpayments.

Lissack makes two principal counterarguments. First, he argues that this interpretation is contradicted by what he claims is the IRS's past practice of treating an examination as a single administrative action. He says that when Congress amended the statute in 2006 to add mandatory whistleblower awards, it

intended to incorporate the IRS's then-existing practice. Pointing to a committee staff summary of the 2006 amendments, Lissack contends it shows the IRS did not previously identify distinct administrative actions within a larger examination.

Lissack's past-practice argument misses the mark. Before 2006, whistleblower awards were entirely at the discretion of the IRS, § 1209, 110 Stat. at 1473. The statute did not specify how the Service might parse the roles of whistleblower submissions in its proceedings and, indeed, the Service had no need to do any such parsing. We are unpersuaded that the Service's decision not to identify distinct issues or portions of an examination when making awards that rested entirely within its own discretion has any relevance to wholly new requirements under the mandatory-award provisions of the 2006 Act.

Second, Lissack defends his but-for causation rule, arguing that he provided "valuable information" insofar as he informed the IRS that the condominium development group taxpayers "are the type of taxpayers to misstate their tax liability generally, and debt in particular." Appellant's Br. 10. The IRS responds that the Whistleblower Definitions Rule correctly interprets the statute to require awards only to whistleblowers whose information advances the IRS's recovery to a substantial degree. We find ample reason to doubt that Congress intended to entitle whistleblowers to substantial awards just for raising plausible but meritless concerns about taxpayers who, on the IRS's further investigation of separate leads, turn out to be noncompliant in some other, unrelated way. Under Lissack's rule, someone who triggered even a small, fruitless investigation could claim a mandatory payout whenever the IRS's own further examination yields a separate, large adjustment. Such a regime

likely would encourage whistleblowers to flyspeck major taxpayers in search of any plausible hint of underpayment. The IRS's approach, in contrast, adheres to the statute by calibrating mandatory awards to the fruits of the particular IRS actions that the whistleblower's information substantially assists.

Congress directed the IRS to reward whistleblowers based on the extent of their substantial contributions to recovery of unpaid taxes. The challenged provisions of the Whistleblower Definitions Rule measure contributions according to the degree to which the whistleblower's specific facts aid the relevant portion of an examination. Those provisions are a valid exercise of the IRS's authority under the tax whistleblower statute.

**2.**

Even if the "administrative action" definition and Example Two are valid and the bad-debt investigation was a separate action not based on his submission, Lissack contends that the IRS's separate action should count as a "related action," entitling him to a share of its proceeds. Under the mandatory-award provision, the IRS must pay whistleblowers awards amounting to 15 to 30 percent "of the proceeds collected as a result of the action (including any *related actions*)." I.R.C. § 7623(b)(1) (emphasis added). The statute does not define "related actions." The IRS reads the phrase to refer to actions against other taxpayers, not named by the whistleblower, based on substantially the same facts such that the Service can—without independent investigation—also recover against those other persons. 26 C.F.R. § 301.7623-2(c).

Lissack argues that the IRS's rule defining "related action" impermissibly narrows the statute's reach. He contends "related actions" includes actions against the same taxpayer for

underpayments different from those identified in the whistleblower's submission. In support, Lissack invokes ordinary meanings of "related" as "belonging to the same family, group, or type; connected," Appellant's Br. 35 (quoting an unidentified edition of the Oxford English Dictionary), and he asserts that the IRS investigation of the condominium development group's bad debt was necessarily "related" to the group's membership-deposits problem his submission identified.

The challenged rule instead defines a "related action" more specifically, as an action against someone the whistleblower did not identify but who engaged in factually parallel nonpayment that the whistleblower's information, without more, enabled the IRS to detect and recover. 26 C.F.R. § 301.7623-2(c). Under the rule, "related action" is "an action against a person other than the person(s) identified in the information provided and subject to the original action(s)" where three conditions are met: (1) the action involves "substantially the same" facts as the whistleblower submission, (2) "[t]he IRS proceeds with the action against the other person based on the specific facts described and documented" in the submission, and (3) "the IRS can identify the unidentified person using the information provided (without first having to use the information provided to identify any other person or having to independently obtain additional information)." *Id*.

In considering whether the rule correctly defines "related actions," we look to the IRS's statutory analysis for its persuasive value. As the Court reiterated in *Loper Bright*, "courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes." 144 S. Ct. at 2262 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). While agency interpretations are not controlling, they nonetheless "constitute a body of

experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. We assess the persuasive value of an agency's interpretation under *Skidmore* based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

The Rule's definition of "related action" makes good sense of that statutory phrase in context. It unites actions that involve "substantially the same" facts to reward whistleblowers whose submissions enable the IRS, without further investigation, to identify additional noncompliant taxpayers. That logic accords with the statute, which directs the IRS to grant awards from recoveries based on a whistleblower's information according to the substantiality of the whistleblower's contribution. *See* I.R.C. § 7623(b)(1). The preamble to the final Whistleblower Definitions Rule shows that the Department of the Treasury considered and rejected broader definitions of "related action," including the type of acontextual dictionary definition Lissack puts forth. *See* Awards for Information Relating to Detecting Underpayments of Tax or Violations of the Internal Revenue Laws, 79 Fed. Reg. 47,246, 47,251-52 (Aug. 12, 2014) (codified at 26 C.F.R. pt. 301). It noted that, when the IRS relies on a whistleblower's information about a person he identified, the general rule delineates the award due. *Id*. at 47,252; *see* 26 C.F.R. § 301.7623-2(b)(1). The IRS accordingly reads the statute's inclusion of "related action" to "encompass[] a finite group of actions that, while likely unknown to the whistleblower, are objectively connected to the information provided." 79 Fed. Reg. at 47,253/3. We are persuaded by that analysis.

Lissack makes two counterarguments. He argues that Congress would have chosen a narrower term than "related" had it intended the IRS's reading. Because "Congress never limited related actions to actions relating to another taxpayer, which it easily could have," Lissack says, the IRS should not be able to include that limitation in its definition. Appellant's Br. 36. But the mere possibility that the statute could have been worded even more clearly does not defeat the IRS's reading. *See, e.g.*, *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 769 (2023).

Lissack also looks to the False Claims Act (FCA) for support. He argues that I.R.C. § 7623 was modeled after the FCA and therefore implicitly adopts its provision stating that, if the Government opts to pursue a *qui tam* plaintiff's civil action through any "alternate remedy" available to it (such as an administrative penalty proceeding), the *qui tam* plaintiff is entitled to the same share of the award as if the claim had proceeded in court. 31 U.S.C. § 3730(c)(5). The Tax Court held that the FCA alternate remedy provision "has no application to a tax case such as this," and that it was in any event unmet here, where "the IRS did not just pursue 'a different legal theory' for the membership deposits issue," but proceeded on "an entirely unrelated issue—the bad debt deduction—that was governed by different law and different facts." *Lissack*, 157 T.C. at 77. The Tax Court correctly held that the bad debt deduction was a distinct tax issue, not an alternative means of pursuing the membership deposit issue that Lissack reported. Lissack's reliance on the FCA to inform the definition of "related actions" in I.R.C. § 7623 is therefore unpersuasive.

Lissack has not established that the IRS rule misinterprets the statute's inclusion of recoveries from any "related action,"

and he does not contend that the rule is otherwise contrary to the APA.

### C. The Tax Court had no obligation to conduct a trial *de novo*.

In challenging the Tax Court's affirmance of the Whistleblower Office determination denying him an award under I.R.C. § 7623(b)(1), Lissack argues that summary judgment is foreclosed here by a genuine factual dispute over whether the revenue agent relied on Lissack's submission to identify the bad-debt issue. He contends that the Tax Court erroneously accepted an administrative record that was incomplete because it did not include the entire examination file.

The parties agree that we review legal rulings of the Tax Court *de novo*, including rulings on motions for summary judgment, *Byers*, 740 F.3d at 675, but they dispute the correct standard of review in the Tax Court. Lissack argues that the Tax Court should review determinations of the Whistleblower Office "as it reviews cases under the Tax Court's original deficiency jurisdiction," Appellant's Br. 40—by "trial *de novo*," *Ax v. Comm'r*, 146 T.C. 153, 161 (2016)—instead of confining its review to the administrative record. Lissack critiques the Tax Court's decision in *Kasper v. Commissioner*, 150 T.C. 8 (2018), which held that the Tax Court reviews whistleblower award decisions under APA section 706(2)(A) based on the administrative record. *Id.* at 14-15, 20-22. Two *amici* join Lissack to argue that *de novo* factfinding by the Tax Court would better serve Congress's intent to establish meaningful review of Whistleblower Office decisions.

The IRS defends the standard of review established in *Kasper*. It also argues that we have no occasion here to reach the issue "because the denial of Lissack's claim was correct

under any standard of review." IRS Br. 45. We agree that the Tax Court's decision is correct under any standard of review, so we have no occasion to pass on the merits of *Kasper*.

Lissack's appeal is comprised of legal questions, including (1) the validity of the Whistleblower Definitions Rule, (2) whether material disputes of fact preclude summary judgment, and (3) the adequacy of the record before the Tax Court.

First, in resolving Lissack's legal challenges to the IRS's interpretations of relevant statutory terms, the Tax Court conducted *de novo* review to identify statutory ambiguity and analyze the Whistleblower Definitions Rule under *Chevron*, while this court now determines without reliance on *Chevron* whether the Rule comports with I.R.C. § 7623.

Second, the propriety of summary judgment is likewise a legal question considered *de novo*. Lissack asserts that the Tax Court should not have granted summary judgment because key record facts are disputed, but he fails to show that to be the case. A factual dispute is "material," precluding summary judgment, only "if its resolution 'might affect the outcome of the suit.'" *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1285 (D.C. Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The IRS *agrees* with Lissack's factual assertion that it would not have opened any examination of the condominium development group if not for Lissack's Form 211. The problem for Lissack is that the but-for causal link he emphasizes is legally insufficient to support his claim.

We, like the Tax Court, recognize that the IRS would have made no tax adjustment on the bad debt if it had not opened an examination on Lissack's submission regarding the taxpayer's treatment of membership deposits. Cognizant of that fact, our *de novo* review of the summary judgment yields the same conclusion as the Tax Court's: Under the statute and Rule, the

adjustment was not "a result of" the "administrative action" regarding membership deposits that the IRS undertook "based on" Lissack's information, or to which his information "substantially contributed." I.R.C. § 7623(b)(1). As we have already explained, *see supra* Discussion Part B, administrative actions on the membership-deposits issue and the bad-debt issue are distinct and unrelated as a matter of law under the valid Whistleblower Definitions Rule. 26 C.F.R. §§ 301.7623-2(a)(2), (b)(1), (c)(1).

Lissack insists that discovery would have established that the revenue agent relied on his submission, but the facts he says he sought to uncover would establish nothing more than but-for causation. In other words, he argues he needs discovery to support an already-accepted factual premise: The examination triggered by Lissack's whistleblower submission led to the IRS's own investigation into the bad debt. He claims he should have been afforded discovery regarding "how the Revenue Agent discovered the other issues." Appellant's Br. 49. In Lissack's view, such information is material "to determine if the issues are 'related' and how helpful the whistleblower's information was to the Revenue Agent." *Id.* Had the administrative record included the "entire taxpayer audit file," Lissack contends, he could have shown that the revenue agent's discovery of the intercompany bad-debt issue relied on the membership-deposits information Lissack submitted. *Id.* at 54. Again, for the reasons already discussed, *see supra* Discussion Part B, none of those additional facts could support a judgment in his favor.

Third, Lissack argues that the record before the Tax Court was inadequate. *Amici* agree. They contend that the statute contemplates trial *de novo* in the Tax Court. They argue the text, context, and drafting history of the statute so require. Lissack and *amici* point out that confining judicial review to

the administrative record is anomalous here because the Whistleblower Office makes the records of its award determinations without adjudicatory procedures, public comment, or other opportunity for stakeholders—including the whistleblower—to be heard. *Amicus* Whistleblower 11099-13W also contends that judicial deference to the Whistleblower Office is inappropriate because the Office's determinations involve no "technically complex issue within an agency's unique expertise," only the kind of matter "that courts are called upon to resolve every day." Amicus Whistleblower 11099-13W Br. 10-11.

We need not here decide whether the Tax Court must conduct a trial *de novo* on an appeal of a Whistleblower Office determination, nor what standard of review applies to a challenge to the scope of the record the IRS submitted to the Tax Court, because Lissack made no request before the Tax Court to expand the administrative record or create a new one. If Lissack believed the record was inadequate, he should have sought to compel production of documents to supplement the record, but he concedes he failed to do so. Reply Br. 25-27.

Lissack counters that he should not have had to do so, because he moved only for *partial* summary judgment on his legal challenge to the Whistleblower Definitions Rule, anticipating that "resolution of that issue would dictate whether [he] needed to get into a long discovery fight." *Id.* at 25. But, as the Tax Court explained when rejecting his motion for reconsideration, even after that court granted the IRS's cross-motion for summary judgment Lissack did not seek supplementation of the administrative record, nor did he "identif[y] any gaps in the administrative record" (nor, for that matter, did he point to any information in his own whistleblower submission) that "was relevant to the bad debt deduction issue." J.A. 369. In view of Lissack's failure to

preserve the point, we affirm the Tax Court's decision to base its review on the portions of the administrative record the IRS compiled and submitted as relevant.

As the Tax Court acknowledged, some whistleblower claims may require discovery and judicial factfinding. But even had he not forfeited the point, Lissack has not shown that he was deprived of any material evidence. Again, on Lissack's own account, the factual point he sought to bolster was but-for causation. But "[h]ow the revenue agent discovered" the intercompany bad-debt issue, Appellant's Br. 49, was both undisputed in his favor, and immaterial. Lissack does not assert that broader access to the IRS files would reveal that his own submission to the IRS contained information on the condominium development group's treatment of intercompany bad debt. And, under the statute and Rule, that bad-debt issue remains unrelated to the membership-deposits issue he identified. We see no error in the Tax Court's rulings on Lissack's record-inadequacy claims.

In sum, the Tax Court correctly concluded that "the record provides more than enough evidence to confirm that petitioner is not eligible for a mandatory award," and ruled in favor of the IRS as a matter of law. *Lissack*, 157 T.C. at 78. The Tax Court credited information in the administrative record showing that "none of the adjustments had anything to do with the membership deposits issue," including the revenue agent's report that Lissack "had not 'provided *any* information for the adjusted issues,'" and the Whistleblower Office analyst's confirmation that Lissack "had made no allegations and submitted no facts related to [the development group's] intercompany debt (or any other adjustment)." *Id.* at 66. Lissack failed to challenge before the Tax Court its reliance on the administrative record or object to the scope of that record, and even now he does not identify information he would have

sought that could have created a material factual dispute precluding summary judgment.

\*     \*     \*

For the foregoing reasons, we reinstate our decision affirming the judgment of the Tax Court.

*So ordered.*